656 P.2d 1383

**John BENTEL and Charlene Bentel, Husband and Wife, et al., Plaintiffs-Appellants,**

v.

**The COUNTY OF BANNOCK, State of Idaho, a political subdivision, et al., Defendants-Respondents.**

No. 13562.

Supreme Court of Idaho.

Jan. 14, 1983.

R.M. Whittier, Pocatello, for plaintiffs-appellants.

Garth Pincock, Gerald W. Olson, and Wesley F. Merrill, Pocatello, for defendants-respondents.

**132**

BISTLINE, Justice.

I.

Plaintiffs-appellants own property along two county roads, Tyhee Road and Rio Vista Road, in Bannock County. In the fall of 1977 the City of Pocatello applied to the Board of Commissioners of Bannock County for permission to place an underground wastewater transmission pipeline within the right-of ways of Tyhee and Rio Vista roads. The Board granted permission on December 12, 1977. On December 19, 1977, J.R. Simplot Co. and the City of Pocatello entered into an agreement under which J.R. Simplot agreed to finance the building of the underground pipeline and a wastewater impoundment reservoir to which the pipeline will lead. Under the agreement two separate pipelines would be built to carry effluent (hereinafter used synonomously with "wastewater") to the pipeline contemplated by the contract. One would carry effluent from the wastewater treatment plant of the City of Pocatello, the other would carry effluent from Simplot's fertilizer plant in Power County. The main pipeline, which would run beneath the road right-of-ways, would carry the effluent to the impoundment reservoir. From there, the effluent would be sold to irrigators during the irrigation season. The City of Pocatello would only use the pipeline during the irrigation season. The rest of the year it would continue to discharge its (treated) wastewater into the Portneuf River.

Under the agreement, Simplot will pay all costs for construction of, and will own, the pipeline. The City of Pocatello will provide engineering expertise in the construction of the pipeline, will operate the system, and will hold Simplot harmless for liability arising out of any negligence of the City of Pocatello. Simplot's primary reason for entering into the agreement is its need for a method of meeting the effluent discharge limitations for discharges into the Portneuf River as set forth in its federal water pollution discharge (NPDES) permit. By impounding and thereafter selling its wastewater to irrigators, Simplot antici-

pates it will be able to meet present and future discharge standards applicable to the Portneuf River.

The City of Pocatello has a right to use the pipeline for twenty years, with options to renew the right at the end of the twenty years. Simplot may use the system to transmit 4.25 million gallons of effluent per day (MGD) and the City reserves to itself the right to use the remaining capacity of the system. The agreement recites an estimate that the capacity of the system not reserved to Simplot and therefore available to the City will be 12 MGD. Rio Vista and Tyhee roads have never been officially dedicated to public use.

Plaintiffs brought suit to enjoin defendants from constructing the proposed pipeline on their lands located on Tyhee and Rio Vista Roads. Plaintiffs additionally requested the district court to declare plaintiffs' interest in the subsurface rights of the roads to be absolute and to permanently enjoin defendants from taking or using plaintiffs' land for any other purposes. In their complaint plaintiffs concede that the state and county have obtained prescriptive rights to surface use of the roads, but assert that they hold the subsurface rights in fee simple. There are currently subsurface gas lines within parts of the right-of-ways of Tyhee and Rio Vista Roads, and underground telephone cables along the entire right-of-ways of both roads. There is presently a wastewater transmission line under a portion of Rio Vista Road, running from Chubbuck to Pocatello's wastewater treatment plant. It was installed by the City of Chubbock and apparently not objected to by plaintiffs.

Upon completion of the pleading stage, the defendants' motion for summary judgment was granted, the court holding that (1) while the plaintiffs as abutting property owners own the subsurface property to the center of the road in fee simple, the County's prescriptive ownership of the road surface carries with it the right to allow installation of utilities above and below the surface; (2) plaintiffs have no standing to challenge as *ultra vires* the contract be-

tween J.R. Simplot Co. and the City of Pocatello; and (3) a wastewater transmission line owned by a private entity with reserved rights in the City may be placed within county roadway easements without compensation to the owners of servient estates. From this judgment plaintiffs perfected this appeal.

## II.

■ We consider first whether the County's prescriptive easement over the road surface includes the right to allow installation of a subsurface wastewater transmission pipeline. Plaintiffs urge upon us the general rule that prescriptive easements are strictly limited to the actual use which gave rise to the easement. *See Elder v. Northwest Timber Co.,* 101 Idaho 356, 613 P.2d 367 (1980); *Gibbens v. Weisshaupt,* 98 Idaho 633, 570 P.2d 870 (1977). Although the use of a prescriptive easement may change under the proper circumstances, such change must not unreasonably increase the burden on the servient estate and must have been foreseeable at the time that the easement was established. *Gibbens, supra.*

The general rule, however, is concerned with prescriptive easements acquired by private parties. In this case we are concerned with a *public* prescriptive easement. Appellant argues that public prescriptive easements should be construed as narrowly as private prescriptive easements. We are persuaded otherwise. Although plaintiffs cite several Idaho cases in support of their contention that public prescriptive easements should be narrowly construed, only one of the cases, *Meservey v. Gulliford,* 14 Idaho 133, 93 P. 780 (1908), involved a public prescriptive easement. *Meservey* simply held that the state need not claim legal title to a highway in an action filed to protect the public interest in a prescriptive roadway easement. It did not address the scope of such easements, other than that one holding of the case is that as to width a 50 foot easement denied by the trial court, being in line with Sec. 932, Rev.Stat. (now I.C. § 40–904) will be upheld, because "common

experience shows that width [is] no more than sufficient for the proper keeping up and repair of roads generally." *Id.* at 148, 93 P. at 785. In more contemporary decisions, other jurisdictions have held the scope of such easements comprehensive enough to include reasonably foreseeable public uses of such roadways, such as subsurface installations for sewage, runoff, communications and other services necessary to the increased quality of life which generally accompanies the growth of civilization. "[A] highway easement acquired by prescription is no less comprehensive than one acquired by grant, dedication or condemnation." *Hill Farm, Inc. v. Hill County,* 436 S.W.2d 320, 323–24 (Tex.1969). *See Green v. Washington Suburban Sanitary Commission,* 259 Md. 206, 269 A.2d 815 (1970); *Elmhurst National Bank v. City of Chicago,* 21 Ill. App.2d 180, 157 N.E.2d 781 (1959); *Trigg v. Allemand,* 95 N.M. 128, 619 P.2d 573, 578 (N.M.App.1980); *Pickett v. California Pacific Utilities,* 619 P.2d 325 (Utah 1980).

■ Non-prescriptive easements for public streets and roads include, as a general matter, the right to install pipelines beneath the surface area of the road.

"The use of a public street or alley for sewer and drainage purposes is necessarily incident to the use for which streets and alleys are opened and laid out, and this is true whether the sewer or drainage uses are public or private, as already noticed. Such use of streets is proper and lawful, is not inconsistent with the object of their establishment, and is not an additional burden on the easement entitling the abutting owners or the owners of the fee to compensation." 11 McQuillan, Municipal Corporations § 31.18 (3rd rev. ed. 1977) (footnotes omitted).

*See Bolinger v. City of Bozeman,* 158 Mont. 507, 493 P.2d 1062 (1972); *Minneapolis Gas Co. v. Zimmerman,* 253 Minn. 164, 91 N.W.2d 642 (1958).

■ We agree with the views of the Connecticut Supreme Court expressed in *Yale University v. City of New Haven,* 104 Conn. 610, 134 A. 268, 271 (1926), that:

"The early common law conception of the extent of this public easement has grown with the public necessity to include, not only the surface and a depth sufficient to make and keep the surface in proper condition for travel, but so much of the highway beneath the surface as is required for public purposes, such as the laying of sewers, catch basins, water, gas, electricity, and telephone and telegraph wires. ... None of these uses of the surface above or beneath the highway add a new servitude to the highway, or interfere, practically, with a fee of the abutter in the highway."

■ Additionally, it is clear that, in Idaho, all public roads, including those created by prescription, are subject to the right of utilities to place utility transmission facilities on or under the road area. I.C. § 62–701 provides in part: "Telegraph and telephone corporations may construct lines of telegraph or telephone along and upon *any* public road or highway ...." (Emphasis added.) I.C. § 62–1101 provides in part: "Any [gas company] shall have ... the right to construct, maintain, and operate [a] pipeline upon, along, and over, or under, *any and all* public roads, streets and highways ...." (Emphasis added.) Since all public road easements, including those acquired by prescription, are subject to the statutory right to install these utility services, the installation of a sewage disposal pipeline within an existing roadway easement does not, as a practical matter, involve an expansion of the easement or an increased burden on the servient estate. In fact, as noted above, several underground utilities already exist within the very easement at issue in this case.

■ Although plaintiffs do not argue that there is a distinction between urban and rural roadway easements for purposes of determining whether underground sewage disposal pipelines are within the scope

of such easements, we recognize that some jurisdictions make this distinction. *See Frederick Gas Co. v. Abrams,* 264 Md. 135, 286 A.2d 766 (1972). *See generally* 26 Am. Jur.2d Eminent Domain § 225 (1966). In our opinion the better reasoned cases hold that there is no practical reason for making such a distinction in today's society. *See Bolinger v. City of Bozeman,* 158 Mont. 507, 493 P.2d 1062 (1972). *See also Ziegler v. Ohio Water Service Co.,* 18 Ohio St.2d 101, 247 N.E.2d 728 (1969); *Huddleston v. City of Eugene,* 34 Or. 343, 55 P. 868 (1899). The fact of expanding public services exists in both rural and urban areas; public easements must necessarily be flexible enough to accommodate the need for those services, particularly where, as here, the intrusion upon the servient estate is de minimus.[1] *See Ziegler, supra,* 247 N.E.2d at 731 ("the construction of [underground] water pipes ... for which an easement for highway purposes has been given, is not an added burden on such land, for which the owner must be compensated."). We agree with the trial court that the county's easement in the Rio Vista and Tyhee Roads included the right to install subsurface pipelines for wastewater transmission.[2]

### III.

■ Plaintiffs next argue that the county was without authority to grant permission to lay this particular pipeline within its easement because the pipeline is intended primarily for the benefit of, and will be owned by, the J.R. Simplot Co., a private corporation. We disagree. It is clear from the contract that the City of Pocatello will derive a direct and substantial benefit from construction of the pipeline, and that public benefit makes construction of the pipeline allowable within the scope of the county's public easement. Even were this not so, the county is not precluded from believing

---

1. Our holding on this issue necessarily disposes of any claim that construction of this pipeline amounts to a taking.

2. Plaintiffs argue that this water is not sewage because it has been treated and, at least in

regard to the City's contribution, is pure enough to discharge into the Portneuf River. Regardless of the water's purity, it remains wastewater and must be disposed of; doing so provides a benefit to the City.

that the pipeline is in the public interest. The pipeline will directly produce local environmental benefits by reducing the amount of effluent discharged by Simplot into the Portneuf River. Not only does common sense lead us to recognize this as beneficial, but we note that both Congress and our state legislature have found such reductions in effluent discharge to be in the public interest. *See* 33 U.S.C. § 1251 et seq. (Clean Water Act); I.C. § 39–3501 et seq. Furthermore, there is a presumption that the governing body's grant of use of a public easement is in the public interest. *See Ziegler, supra,* 247 N.E.2d at 731. *See e.g., Idaho Water Resource Board v. Kramer,* 97 Idaho 535, 548 P.2d 35 (1976). This Court has recognized in other contexts that the fact that a private party may reap a special benefit from governmental action does not of itself militate against recognizing that the public interest is being served. *See Idaho Water Resource Board, supra; Boise Redevelopment Agency v. Yick Kong Corp.,* 94 Idaho 876, 499 P.2d 575 (1972). Other jurisdictions agree. *See City of Phoenix v. Phoenix Civic Auditorium & Convention Center Association,* 99 Ariz. 270, 408 P.2d 818 (1965); *McTaggart v. Montana Power Co.,* 602 P.2d 992 (Mont.1979); *Town of Steilacoom v. Thompson,* 69 Wash.2d 705, 419 P.2d 989 (1966); *State v. Board of Commissioners,* 28 Wash.2d 891, 184 P.2d 577 (1947).

■ Ownership of the pipeline by a private entity does not mean that domination of the *easement* itself falls into the hands of the private entity. Bannock County merely granted the City of Pocatello permission to lay the pipeline within its easement. As we have already noted, the County does not have authority to grant a permanent easement. Furthermore, "[n]o right to the use of streets and highways for private purposes can be acquired by prescription as against the state or its political subdivisions . . . ." *State v. Idaho Power Co.,* 81 Idaho 487, 346 P.2d 596 (1959). Should it become necessary to remove the pipeline at any point in the future, the county would clearly have the authority to

order that done, and without compensation. *Mountain States Telephone & Telegraph Co. v. Boise Redevelopment Agency,* 101 Idaho 30, 607 P.2d 1084 (1980); *Idaho Power, supra.* In *Mountain States* this Court recognized that:

> "the utilities use the public streets at the convenience and tolerance of the public, and the public should hence not have to pay to terminate a use which they have permitted only as a courtesy to aid the utilities. The utilities have . . . the benefit of using public streets to generate their profits over the years, and they should not . . . be heard to complain [if] such use is terminated . . . ." *Mountain States,* at 35, 607 P.2d at 1089.

We agree with the trial court that Bannock County could properly granted permission to the City of Pocatello to lay a* subsurface sewage disposal pipeline beneath the county's roadway easements, and that the fact that the pipeline would be a joint venture between the city and a private corporation does not preclude the granting of such permission.

### IV.

■ Plaintiffs argued below that the contract between the City of Pocatello and the J.R. Simplot Co. is *ultra vires.* The trial court held that appellants had no standing to raise that issue.

"An inherent duty of any court is to inquire into the underlying interest at stake in a legal proceeding. Doing so ensures the rational operation of the legal process. Therefore, in every lawsuit there must be what is called a justicible interest cognizable in the courts as a precondition to any party maintaining a lawsuit." *Miller v. Martin,* 93 Idaho 924, 926, 478 P.2d 874, 876 (1970).

"Standing is that aspect of justiciability focusing on the party seeking a forum rather than on the issues he wants adjudicated. And the crucial inquiry in its determination is 'whether the plaintiff has "alleged such a personal stake in the outcome of the controversy" as to warrant *his* invocation of [the court's] juris-

diction and to justify exercise of the court's remedial powers on his behalf.'" *Life of the Land v. Land Use Commission of the State of Hawaii,* 623 P.2d 431, 438 (Hawaii 1981). Quoting *Warth v. Seldin,* 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2204–05, 45 L.Ed.2d 343 (1975) (emphasis in original).

Plaintiffs are residents and property owners of Bannock County; the roads and easements at issue are within Bannock County; none of the plaintiffs claim to be either residents or taxpayers of the City of Pocatello. Accordingly, we agree with the district court that plaintiffs have not satisfactorily established a standing to assert the invalidity of the contract entered into by the City of Pocatello and thereby to mount what is essentially an indirect attack on the County's grant to the City of the right to construct the underground pipeline in the easement area of Tyhee and Rio Vista Roads.

Judgment *affirmed.* Costs to the respondents.

DONALDSON, C.J., and McFADDEN, SHEPARD and BAKES, JJ., concur.

McFADDEN, J., registered his vote prior to his retirement on August 31, 1982.