Charles W. BECK & Alta A. Beck, et al., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 699–86L.

United States Claims Court.

April 25, 1989.

Scott W. Reed, Coeur D'Alene, Idaho, for plaintiffs.

Alan Brenner, Washington, D.C., with whom was Acting Asst. Atty. Gen. Donald Carr, for defendant.

## OPINION

FUTEY, Judge.

This case is before the court on defendant's motion for summary judgment under RUSCC 56. Plaintiffs' complaint alleges that the construction of a second power transmission line on their property, by the defendant, constitutes a taking under the Fifth Amendment of the United States Constitution for which they are entitled to just compensation. Defendant asserts that the government has not affected a taking since the transmission line was built upon land in which the United States Government acquired an easement interest for the purpose of constructing such a structure. For the reasons stated below, defendant's motion is denied.

### Factual Background

Between 1950 and 1951, defendant, Bonneville Power Administration (BPA), a United States Government Agency, purchased 18 perpetual easements upon land located in Rathdum Prairie in Kootenai County, Idaho, for the purpose of constructing and operating electric power transmission lines.[1] The easements were purchased by the BPA for prices varying between $0.02 and $0.44 per lineal foot. Each easement grant encompasses a section of land 425' in width described by metes and bounds, and courses and distances.[2]

On June 5, 1950, the BPA began construction of a 230 kilovolt (kV) transmission line, the Spokane–Hot Springs line (Spokane line), within the boundaries of the easements. This line serves as part of the power transmission system which connects power generation in eastern Montana and northern Idaho to Northwest load centers, transmitting power between the Northwest and Montana and supporting nearby loads.[3] Construction of the line was completed on approximately October 1, 1952.

In 1986, the BPA erected a 500 kV transmission line,[4] the Garrison–Spokane line, which stretches across the states of Montana, Idaho and Washington.[5] The segment of the transmission line which lies within the 18 easements in Kootenai County is called the Taft–Bell line. This line, consisting of towers, lines and appurtenances larger than those of the Spokane line, runs parallel to the Spokane line. It occupies 135' within the 425' of the ease-

---

1. 16 U.S.C. § 832 (1982) states that "[f]or the purpose of improving navigation on the Columbia River, and for other purposes incidental thereto, the dam locks, power plant, and appurtenant works under construction on August 20, 1937 at Bonneville, Oregon and North Bonneville, Washington ... shall be completed, maintained and operated under the direction of the Secretary of the Army...." The electric energy produced by the project is disposed of by the Administrator of the BPA who is appointed by, and responsible to, the Secretary of Energy. 16 U.S.C. § 832a(a). Pursuant to 16 U.S.C. § 832a(c), the BPA Administrator is authorized "to acquire, by purchase ... such real and personal property, or any interest therein, including ... easements ... as the administrator finds necessary or appropriate...."

2. The easement boundaries were measured from a staked out survey line of the proposed transmission line as follows: "Boundaries of said strip lying 62.5' distant southerly from and 362.5' distant northerly from and parallel to the survey line of the Spokane–Hot Springs transmission line as now located and staked on the ground over, across, upon, and/or adjacent to the above described property, said survey line ..."

3. This line is also known as the Bell–Noxon–Hot Springs line, named for its sub-stations which define its end and intermediate termini. (Defendant's Answer to Plaintiffs' First Set of Interrogatories, No. 14).

4. It is unclear from the parties' submissions whether the Taft–Bell line transmits 500 kV or 525 kV. Compare, for example, (Plaintiffs' Response to Defendant's Proposed Finding of Uncontroverted Fact, No. 6), with (Plaintiffs' Complaint).

5. Authorization for the construction of a power transmission system was originally provided for under the Bonneville Project Act of 1937, ch. 720 § 1, 50 stat. 731 (1937). In 1974, Congress extended this authority through the Federal Columbia River Transmission System Act, relevant portion codified at 16 U.S.C. § 838(a) (1982). Congress later provided funding for the Taft–Bell line under a Joint Resolution, Pub.L. No. 95–482, 92 Stat. 1603 (1978).

ment boundaries, upon which no structures were previously built. Prior to the construction of the Taft–Bell line, plaintiffs cultivated crops within the easement boundaries on the unused land. At least some of the landowners were notified of the BPA's intention to build the Taft–Bell line before construction began. The defendant paid no additional compensation to the easement grantors or their successors in interest to construct the Taft–Bell line, except that which was paid under the original easement agreement.

Plaintiffs, owners of land subject to the easements,[6] filed a complaint in this court on November 3, 1986, alleging that the construction of the Taft–Bell line constitutes a taking under the Fifth Amendment. They request compensation for damages to crops as a result of the construction of the Taft–Bell line, and severance damages[7] to the remaining property for interference with "normal mechanized crop cultivation," and "diminution of values of the agricultural, industrial and residential property owned by plaintiffs." (Plaintiffs' Proposed Findings of Fact, Nos. 5 and 7). Plaintiffs specifically state that no additional land outside of the original easement boundaries has been taken, and that the taking was accomplished only through actual physical encroachment. (Plaintiffs' Answers to Interrogatories of Defendant, Nos. 2 and 7). Plaintiffs "do not question the right of the Bonneville Power Administration to make the decision to construct a new higher voltage transmission line to add additional power to the Federal Columbia River Power System." (Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment at 24). Defendant asserts that the express language of the easement and the applicable case law establish that the erection of the Taft–Bell line, within the boundaries of the easement, did not effect a taking.

*Discussion*

Summary judgment is appropriate where the pleadings raise no genuine dispute as to any material fact and, as a matter of law the moving party is entitled to judgment. RUSCC 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). The moving party bears the burden of establishing an absence of evidence to support the non-movant's case. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The party opposing the motion for summary judgment has the burden of showing sufficient evidence, not necessarily admissible, of a genuine issue of material fact in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Any doubt over factual issues must be resolved in favor of the party opposing summary judgment, *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.*, 755 F.2d 158, 163 (Fed.Cir.1985), to whom the benefit of all presumptions and inferences runs. *H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1574 (Fed.Cir.1984) *cert. denied*, 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985).

To grant summary judgment in the present case, the court must find that as a matter of law, defendant has a right to construct additional power transmission systems, and that the easement grant did not reserve any rights for the grantors to cultivate crops within the specified easement boundaries. The burden is upon the defendant to prove the absence of any factual issues that would bear upon these questions.

Plaintiffs contend that the construction of the Taft–Bell line violates the language of the easement and the intent of the parties, which, they argue, was to build only *one* transmission line. Defendant, however, avers that the language of the easement unambiguously provides for the construction of a second power line. In sup-

---

6. Whether all the plaintiffs are owners in fee of the land subject to the easements is not clear. *See* (Plaintiffs' Complaint, para. 1), which states that the transmission lines run across "land owned or leased by plaintiffs."

7. Severance damages arise as a result of a partial taking of land which diminishes the value of the remaining land. *See United States v. Miller,* 317 U.S. 369, 376, 63 S.Ct. 276, 281, 87 L.Ed. 336 (1943).

port of its motion, defendant has submitted each easement grant document entered into by the government and the grantors. The majority of the easement grants read as follows: [8]

### TRANSMISSION LINE EASEMENT

■ The GRANTOR ... for and in consideration ... hereby grants, bargains, sells, and conveys to the UNITED STATES OF AMERICA and its assigns, a perpetual easement and right to enter and erect, operate, maintain, repair, rebuild and patrol *one or more electric power transmission lines* and appurtenant signal lines, poles, towers, wires, cables and appliances necessary in connection therewith, in, upon, over, under, and across the following-described parcel of land.... [a description of the land follows] [9]

■ together with the right to clear said parcel of land and keep the same clear of all brush, timber, structures, and fire hazards, provided however, the words 'fire hazards' *shall not be interpreted to include growing crops;* and also the future right to top, limb, fell, and remove all growing trees, dead trees or snags (collectively called "danger trees") located on Grantor's land adjacent to said parcel of land, which could fall upon or against said transmission and signal line facilities.[10]

\* \* \* \* \* \*

■ The Grantor covenants to and with the UNITED STATES OF AMERICA and its assigns that the title to all brush and timber cut and removed from said parcel of land and also all growing trees, dead trees or snags (collectively called "danger trees") cut and removed from

Grantor's land adjacent to said parcel of land, is and shall be vested in the UNITED STATES OF AMERICA and its assigns and that the *consideration paid* for conveying said easement and rights herein described *is accepted as full compensation for all damages incidental* to the exercise of any of said rights.

■ The Grantor also covenants to and with the UNITED STATES OF AMERICA that Grantor is lawfully seized and possessed of the lands aforesaid; has a good and lawful right and power to sell and convey same; that same *are free and clear of encumbrances, except as above indicated;* and that Grantor will forever warrant and defend the title to said easement and the quiet possession thereof against the lawful claims and demands of all persons whomsoever.[11]

Defendant contends that the language of paragraph [1] clearly allows for the construction of "one or more" power lines. Plaintiffs, however, suggest that this wording provided only for the placement of one or more lines on the Spokane transmission system, rather than the construction of a new set of towers and transmission lines. Plaintiffs additionally argue that, as evidenced by the title of the grant, "Transmission Line Easement," the word "line" being singular, the easement documents provided for only one transmission line to be constructed.

Paragraph [2] of the grant, which states that the United States has the right to clear the parcel except for growing crops, appears to reserve rights for the grantors to utilize land within the specified boundaries for agricultural purposes. Additionally, paragraph [4] declares that the

---

**8.** The court has added numbers at the beginning of each paragraph for purposes of reference. Additionally, emphasis has been added to significant phrases.

**9.** In some grants, after this paragraph, the following passage appears:

I ... lessee under an unrecorded lease for a valuable consideration from the aforementioned grantor, hereby acknowledge, join in this instrument for the sole and specific purpose of subordinating any and all interest I

may have in said premises to the easement herein granted to the UNITED STATES OF AMERICA, and am not entering into or becoming a party in any degree or manner to the warranty obtained herein.

**10.** This paragraph begins at the top of the signature page and appears to continue from the sections set forth above.

**11.** Following the above is a notarized page for the acknowledgment of conveyance.

government's right to convey the easement is subject to the encumbrances as stated in the grant. However, paragraph [3] declares that the payment of compensation for the easement is "full compensation for all incidental damages."

Interpretation of a written instrument is a question of law, and therefore is to be determined by the court. *See Jamsar v. United States,* 194 Ct.Cl. 819, 823, 442 F.2d 930, 932 (1971); *National Rural Util. Coop. Fin. Corp. v. United States,* 14 Cl.Ct. 130, 136 (1988) *aff'd,* 867 F.2d 1393 (Fed.Cir.1989). The language of such an instrument must be interpreted according to its plain meaning, as determined from a reading of the document as a whole. *Thanet Corp. v. United States,* 219 Ct.Cl. 75, 82, 591 F.2d 629, 633 (1979); *Industrial Indem. Co. v. United States,* 14 Cl.Ct. 351, 356 (1988). Additionally, the easement must be construed in accordance with the understanding of the parties as reflected by their conduct prior to the controversy. *Julius Goldman's Egg City v. United States,* 697 F.2d 1051 (Fed.Cir.1983), *cert. denied,* 464 U.S. 814, 104 S.Ct. 68, 78 L.Ed.2d 83 (1983), citing *Macke Co. v. United States,* 199 Ct.Cl. 552, 556, 467 F.2d 1323, 1325 (1972).

From the language of the easement grant alone, read as a whole, it can not be determined whether the grant confers rights upon the grantors to utilize the easement or if it expressly provides for the construction of more than one transmission system. The defendant, in support of its construction of the grant document, states that the parties contemplated the building of another transmission line, as evidenced by "the fact that the first line was built as far to one side of the easement as possible, coupled with the further fact that well more than twice as much unused easement width remained after the erection of the first line...." (Defendant's Reply to Plaintiffs' Opposition to Defendant's Motion for Summary Judgment at 2).[12] Plaintiffs contend that the landowners were never informed that the government contemplated the construction of a second transmission system at the time they entered into the easement agreements.[13] Consequently, they continued planting and cultivating crops within the easement boundaries. The court is not persuaded from this evidence that the language of the grant should be read as supporting defendant's position.

Additionally, the easement grant "should be construed most strongly against the drafter," which in this case is the government. *United States v. Seckinger,* 397 U.S. 203, 210, 90 S.Ct. 880, 884, 25 L.Ed.2d 224 (1970) (citations omitted). Therefore, defendant has failed to overcome its burden of showing an absence of genuine issues of material fact as to whether rights were reserved for the grantors and if the easement contemplated the right to build more than one transmission line based on the grant documents alone.

Defendant submits that even if the language of the grant is ambiguous, the Idaho Supreme Court has held in *Bentel v. County of Bannock,* 104 Idaho 130, 656 P.2d 1383 (1983), that the scope of public easements, such as that at issue, are to be construed more broadly than private easements, and can be expanded to provide for reasonably foreseeable public uses necessary for the growth of society. Thus, defendant claims, that as a matter of law the BPA is entitled to build additional structures within the easement boundaries which are necessary for the region's growth. However, *Bentel* dealt with an easement acquired by prescription, not by written agreement. Additionally, the Idaho Supreme Court considered the extent to which a change in the use of a public easement burdens the land owners in deter-

12. The transmission towers of the Spokane line require a 125' wide strip of land on which to be built. The portion of the Spokane line which lies on plaintiffs' property was erected 62.5' from the northern boundary of the easement leaving 300' of unused land. The Taft–Bell line requires a 135' wide strip of land.

13. *See* Affidavit of Charles W. Beck in Opposition to Summary Judgment at 3–4. Plaintiff Beck is the only remaining original landowner who actually entered into the easement agreement with the BPA.

mining whether the expanded use was proper. *Id.*

Furthermore, express language of an easement grant can limit the use of the easement. *See Restatement of Property,* §§ 482, 483 (1944); *see also, Bernards v. Link,* 199 Or. 579, 248 P.2d 341 (1952). As discussed above, based on the evidence submitted, the court cannot determine if the intent of the parties in entering into the easement was to provide for such a restriction. Therefore, this action cannot be resolved on summary judgment.

### Conclusion

After a review of the pleadings, the court finds material facts in dispute which require further ventilation. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Philadelphia Suburban Corp. v. United States,* 217 Ct.Cl. 705 (1978). Accordingly, defendant's motion for summary judgment is denied.

The parties are directed to file a joint status report within 30 days, apprising the Court of further proceedings in this case, in accordance with RUSCC, Appendix G.