846 P.2d 239

**IDAHO BRANCH, INC. OF THE ASSO-CIATED GENERAL CONTRACTORS OF AMERICA, INC., an Idaho corporation; Idaho Sand & Gravel Company, Inc., an Idaho corporation; Nelson-Deppe, Inc., an Idaho corporation; and Bryan C. Rambo Crushing Company, Inc., Plaintiffs–Appellants–Cross Respondents,**

**v.**

**NAMPA HIGHWAY DISTRICT NO. 1, a political subdivision of the State of Idaho; Canyon Highway District No. 4, a political subdivision of the State of Idaho, Defendants–Respondents–Cross Appellants,**

**and**

**WEST ONE BANK, IDAHO, NATIONAL ASSOCIATION, formerly known as The Idaho First National Bank, Defendant–Respondent.**

**No. 19352.**

Court of Appeals of Idaho.

Feb. 3, 1993.

Hall, Farley, Oberrecht & Blanton, Boise, for appellants. Phillip S. Oberrecht, argued.

White, Peterson, Perry, Pruss, Morrow and Gigray, P.A., Nampa, for respondents. William F. Gigray III, Caldwell, argued.

SWANSTROM, Judge.

This is an action brought by a contractors' association and some of its members against two highway districts and a bank for declaratory and injunctive relief. The complaint alleged that the districts had violated provisions of the Idaho Constitution in financing and purchasing a rock crusher for the joint use of the districts. The trial court dismissed the action, on defendants' motions, ruling that the plaintiffs lacked standing to contest the constitutionality of the highway districts' actions in purchasing and financing the equipment. The plaintiffs appealed the order dismissing their action. The defendants cross-appealed, contending the court erred in denying their request for attorney fees. For the following reasons, we affirm.

In May, 1986, Nampa Highway District No. 1 and Canyon Highway District No. 4 (the districts) entered into a "Municipal Equipment Financing Agreement" with Idaho First National Bank (now West One Bank) to finance the purchase of a rock crusher over a six-year term. By an earlier agreement, the districts had joined together for the purpose of operating a rock crusher and related equipment to supply the gravel needs of the two districts. The commissioners of each district formed the governing board of the crushing operation, loaned specified pieces of equipment to the operation and created a joint operating fund. The budget of the joint fund for the crushing operation was to be adopted at a board meeting only after the respective public hearings and approval of each district's share of the joint venture.

Idaho Branch, Inc. of The Associated General Contractors of America, Inc., (Idaho AGC) is an Idaho non-profit cooperative association of construction contractors, whose purposes include the advancement of the general welfare of such contractors in Idaho. Idaho AGC and three of its member contractors (plaintiffs) sought to have the financing agreement between the districts and the bank invalidated. Plaintiffs alleged that the agreement violated art. 7, § 17 and art. 8, § 3 of the Idaho Constitution, dealing with limitations on county indebtedness and dedication of highway user fees to specified uses, not including the

purchase of a rock crusher.[1] They asserted that, as taxpayers, they were harmed by the action of the districts, and as competitor gravel producers, they were deprived of their right to bid on contracts to supply the gravel needs of the districts, causing them to suffer business losses. Their complaint prayed for no damages, but only for a declaratory judgment holding that the financing agreement was "void and unenforceable," for an injunction precluding the purchase of the crusher, and for attorney fees and costs.

The districts and the bank answered the complaint and subsequently filed motions to dismiss, asserting that the plaintiffs failed to state a claim upon which relief could be granted. I.R.C.P. 12(b)(6). After extensive discovery, plaintiffs moved for summary judgment, supporting the motion with affidavits, exhibits and deposition testimony. A hearing was held on all pending motions. In support of their motions to dismiss, the districts argued that plaintiffs had no standing to pursue their action for a declaratory judgment. The trial court agreed. The court reasoned "that neither Article 8, § 3 nor Article 7, § 17 of the Idaho Constitution protects the interests sought to be protected by the Plaintiffs." The court granted the districts' motion to dismiss and entered an order dismissing the action on grounds that the plaintiffs lacked standing.[2] Accordingly, the court

did not reach the merits of the plaintiffs' motion for summary judgment. The plaintiffs appealed.

■■■ The standard for reviewing a Rule 12(b)(6) dismissal is the same standard applicable to motions for summary judgment. I.R.C.P. 12(b), 56; *Miles v. Idaho Power Co.*, 116 Idaho 635, 637, 778 P.2d 757, 759 (1989); *Tomchak v. Walker*, 108 Idaho 446, 700 P.2d 68 (1985). "The non-moving party is entitled to have all inferences from the record viewed in his favor and only then may the question be asked whether a claim for relief has been stated." *Miles v. Idaho Power Co.*, 116 Idaho at 637, 778 P.2d at 759. We will review freely any statements of law and the conclusion that the facts shown did not entitle the contractors to any relief. *Staggie v. Idaho Falls Consol. Hospitals, Inc.*, 110 Idaho 349, 351, 715 P.2d 1019, 1021 (Ct.App.1986). Where, as here, we are dealing with facts of peculiar constitutional significance, i.e., standing, we will evaluate the entire record independently to assure a proper application of constitutional principles. IDAHO APPELLATE HANDBOOK *Standards of Appellate Review* § 3.3.6.1 (Idaho Law Foundation, Inc. 1985).

The contractors argue that the trial court should have determined that they had standing under art. 7, § 17 and art. 8, § 3.

---

1. [Art. 7] § 17. **Gasoline taxes and motor vehicle registration fees to be expended on highways.**—On and after July 1, 1941 the proceeds from the imposition of any tax on gasoline and like motor vehicle fuels sold or used to propel motor vehicles upon the highways of this state and from any tax or fee for the registration of motor vehicles, in excess of the necessary costs of collection and administration and any refund or credits authorized by law, shall be used exclusively for the construction, repair, maintenance and traffic supervision of the public highways of this state and the payment of the interest and principal of obligations incurred for said purposes; and no part of such revenues shall, by transfer of funds or otherwise, be diverted to any other purposes whatsoever.

[Art. 8] § 3. **Limitations on county and municipal indebtedness.**—No county, city, board of education, or school district, or other subdivision of the state, shall incur any indebtedness, or liability, in any manner, or for any purpose, exceeding in that year, the income and revenue

provided for it for such year, without the assent of two thirds (⅔) of the qualified electors thereof voting at an election to be held for that purpose, ... unless, before or at the time of incurring such indebtedness, provisions shall be made for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof, within thirty (30) years from the time of contracting the same. Any indebtedness or liability incurred contrary to this provision shall be void: Provided that this section shall not be construed to apply to the ordinary and necessary expenses authorized by the general laws of the state....

2. "A determination that standing does not exist is equivalent to a holding that the plaintiff has failed to state a claim upon which relief can be granted, because whatever injury the plaintiff might have sustained was not an injury to a legally protected right or interest." *State Bd. for Community Colleges and Occupational Educ. v. Olson*, 687 P.2d 429, 435 (Colo.1984).

In addition to claiming a generalized harm common to all taxpayers, the contractors alleged that the specialized harm which they suffered as a result of the districts' action was a loss of business opportunity and revenues from future contracts to sell gravel to the districts. They contend that the trial court's ruling that they had no standing was contrary to *Miles v. Idaho Power Co., supra,* which requires only a specialized and peculiar injury to confer standing upon a taxpayer to challenge governmental action.

Plaintiffs have brought this action within the framework of the (Idaho) Uniform Declaratory Judgment Act. Certain sections of the Act are pertinent to the issue of "standing." Idaho Code § 10–1202 provides that "[a]ny person ... whose rights, status or other legal relations are affected by a ... contract ... may have determined any question of construction or validity arising under the ... contract ... and obtain a declaration of rights, status or other legal relations thereunder." The general power of the courts to declare rights, status, and other legal relations is not limited by the enumeration of specific subjects for declaratory judgment relief which will terminate an actual controversy or remove an uncertainty. I.C. § 10–1205. However, a court may refuse to render a declaratory judgment or decree if the judgment would not terminate the uncertainty or controversy giving rise to the proceeding. I.C. § 10–1206. The Act is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations, and is to be liberally construed and administered. I.C. § 10–1212. Finally, the Act shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of the states which enact it, and to harmonize, as far as possible, with federal laws and regulations on the subject of declaratory judgments and decrees. I.C. § 10–1215.

As shown above, to have standing a plaintiff must show the existence of an actual controversy which can be resolved or terminated by the action. I.C. §§ 10–1205, –1206. In *Harris v. Cassia County,*

106 Idaho 513, 681 P.2d 988 (1984), the Idaho Supreme Court summarized the elements or criteria of a "justiciable controversy" taken from *Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227, 240–41, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937), saying "we will apply these criteria in conjunction with pertinent Idaho case law cited *infra.*" 106 Idaho at 516, 681 P.2d at 991 (citations omitted).

> A "controversy" in this sense must be one that is appropriate for judicial determination.... A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot.... The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests.... It must be a real and substantial controversy admitting of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Harris v. Cassia County,* 106 Idaho at 516, 681 P.2d at 991. Our Supreme Court reiterated a previous holding that the right sought to be protected by a declaratory judgment "may invoke either remedial or preventive relief; it may relate to a right that has either been breached or is only yet in dispute or a status undisturbed but threatened or endangered; but, in either or any event, it must involve actual and existing facts." 106 Idaho at 516–17, 681 P.2d at 991–92 (citations omitted).

A more recent discussion of "standing" is found in *Miles v. Idaho Power Co., supra.* There, a challenge was made to the standing of a utility ratepayer who had brought a declaratory judgment action challenging the constitutionality of a contract between the utility and the State of Idaho, in which the utility agreed to relinquish certain of its water rights. Again, primarily, the Idaho Supreme Court looked for guidance to federal decisions and to its own prior decisions. The Court noted that the doctrine of standing focuses on the party seeking relief and not on the issues the party wishes to have adjudicated. The

Court adopted language from *Duke Power Co. v. Carolina Env. Study Group,* 438 U.S. 59, 72, 98 S.Ct. 2620, 2630, 57 L.Ed.2d 595 (1978), as an apt explanation of "the major aspect of standing."

> "The essence of the standing inquiry is whether the party seeking to invoke the court's jurisdiction has "alleged such a personal stake in the outcome of the controversy as to assure the concrete adversariness which sharpens the presentation upon which the court so depends for illumination of difficult constitutional questions." As refined by subsequent reformation, this requirement of "personal stake" has come to be understood to require not only a "distinct palpable injury" to the plaintiff, but also a "fairly traceable" causal connection between the claimed injury and the challenged conduct. (Citations omitted.)"

*Duke Power Co. v. Carolina Env. Study Group,* 438 U.S. 59, 72, 98 S.Ct. 2620, 2630, 57 L.Ed.2d 595 (1978).

*Miles v. Idaho Power Co.,* 116 Idaho at 641, 778 P.2d at 763. *See also Bentel v. County of Bannock,* 104 Idaho 130, 135–36, 656 P.2d 1383, 1388–89 (1983).

The Court repeated in *Miles* that a central foundation of the Idaho Declaratory Judgment Act is the requirement of adverse parties, citing *Whitney v. Randall,* 58 Idaho 49, 70 P.2d 384 (1937). The Court explained that "[f]or the parties to be in an adversarial position, they must have such a personal stake in the outcome of the controversy that a meaningful representation and advocacy of the issues is ensured." 116 Idaho at 641, 778 P.2d at 763. The Court concluded that to have standing to bring a declaratory judgment action, the plaintiffs must present more than a generalized grievance shared by other citizens and taxpayers; they must assert a "specialized and peculiar injury, although it may affect a large class of individuals." 116 Idaho at 642, 778 P.2d at 764. The Court held, however, that the injury asserted by Miles as a ratepayer and customer of Idaho Power, not as a taxpayer, was sufficient to confer standing to challenge the agreement between the state and the power company.

The Court also determined that the ratepayers were the group most adverse to the agreement in question. Concluding that Miles had the requisite standing to bring the action, the Court went on to address the merits, that is, whether the ratepayer's constitutional rights to due process and equal protection were violated by the challenged agreement.

In the present case, the trial court assumed "arguendo" that plaintiffs asserted an actual injury, that is, past and future pecuniary losses resulting from the lost opportunities to competitively bid on the districts' gravel needs. The trial court then went to the second part of the analysis, suggested by *Warth v. Seldin,* 422 U.S. 490, 500, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975) and by *State Bd. for Community Colleges & Occupational Educ. v. Olson,* 687 P.2d 429, 434–35 (Colo. 1984), which is to determine "whether the injury is to a legally protected or cognizable interest."

> The court must determine whether the particular constitutional or statutory provision underlying the claim creates a right or interest in the plaintiff that has been arguably abridged by the challenged governmental action. A determination that standing exists thus amounts to a holding that the plaintiff has stated a claim for relief by demonstrating the existence of a legal right or interest which has been arguably violated by the action of the defendant.

*Id.,* 687 P.2d at 435 (citations omitted). The trial court held that the plaintiffs failed to meet this part of the *Warth–Olson* test, and thus lacked standing to challenge the districts' actions. The trial court's decision seemingly is based on the plaintiffs' inability to show that either of the constitutional provisions which they contend were violated creates a right or guarantees an opportunity in the contractors to bid on the districts' gravel needs. The language used by the trial court suggests that the court may have imposed a more restrictive test for standing than our Supreme Court has announced and, in spite

of his "no standing" ruling, may have implicitly ruled in part on the merits.

In the trial court, as on appeal, the plaintiffs urged that plaintiffs met the test for standing which was announced in *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), and *Barlow v. Collins*, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970). In these two cases the Court attempted to enunciate a test that determines a party has "standing" if he "is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." 397 U.S. at 153, 90 S.Ct. at 829. The Court said, however, that this inquiry does not involve a determination that the "plaintiff has a *legally protected interest* which the defendant invaded," because that inquiry would go to the merits of the action. 397 U.S. at 171, 90 S.Ct. at 840 (emphasis added). We confess that this nice distinction is not easily discernable, nor is it always followed by the courts.[3] In the present case, the trial court opined that the " 'zone of interests' is analogous to 'legally protected or cognizable interest.' " Following the analysis set forth in *O'Bryant v. Public Utilities Comm'n of the State of Colorado*, 778 P.2d 648 (Colo.1989), the trial court held that "neither art. 8, § 3 nor art. 7, § 17 of the Idaho Constitution protects the interests sought to be protected by Plaintiffs." The court concluded that plaintiffs had no standing to bring the action.

■ As noted earlier, the test adopted by the Idaho Supreme Court is one couched in different language adopted from *Duke Power Co. v. Carolina Env. Study Group, supra.* Our Supreme Court has held that to invoke the trial court's jurisdiction in a declaratory judgment action, the plaintiffs must allege a "personal stake" in the outcome of the controversy, which "has come to be understood to require not only a 'distinct palpable injury' to the plaintiff, but also a 'fairly traceable' causal connection between the claimed injury and the challenged conduct." *Miles v. Idaho Power Co.*, 116 Idaho at 641, 778 P.2d at 763, *quoting Duke Power Co.*, 438 U.S. 59, 72, 98 S.Ct. 2620, 2629, 57 L.Ed.2d 595 (1978).

■ In applying this test, we conclude that the plaintiffs did have standing to bring the action for a declaratory judgment. The "challenged conduct" is the action taken by the districts to own and operate a gravel crusher, allegedly in violation of art. 7, § 17 and art. 8, § 3 of the Idaho Constitution. There is a "fairly traceable causal connection" between the challenged conduct and the plaintiffs' alleged injury. We believe that in the present case this is sufficient to bestow standing upon the plaintiffs. *Compare Hobbs v. Abrams*, 104 Idaho 205, 657 P.2d 1073 (1983) (beer retailer held to have standing to challenge the constitutionality of a county ordinance which allegedly conflicted with state statute even though retailer's asserted rights were not derived from the statute). A "justiciable controversy" exists, as defined in *Harris, supra.* The plaintiffs have shown that they have such "a personal stake in the outcome of the controversy that a meaningful representation and advocacy of the issues is ensured." *Miles v. Idaho Power Co.*, 116 Idaho at 641, 778 P.2d at 763. Indeed, we are unable to suggest any other group or advocate—outside of the political arena—who would have any greater interest in questioning the districts' scheme to own and operate their own gravel crushing equipment rather than to obtain gravel from commercial sources through the bidding process. For the foregoing reasons, we hold that the trial court

---

**3.** *See, e.g., O'Bryant v. Public Utilities Comm'n of the State of Colorado*, 778 P.2d 648 (Colo.1989); *Eckles v. State of Oregon*, 306 Or. 380, 760 P.2d 846 (1988) (two concepts of "standing" distinguished).

The books are full of opinions that dismiss a plaintiff for lack of "standing" when dismissal, if proper at all, actually rested either upon the plaintiff's failure to prove on the merits the existence of the legally protected interest that he claimed, or on his failure to prove that the challenged agency action was reviewable at his instance.

*Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 176, 90 S.Ct. 827, 843, 25 L.Ed.2d 184 (1970) (Brennan, J., joined by White, J., concurring and dissenting).

erred in holding that the plaintiffs lacked standing to bring the action.

This conclusion does not end our inquiry, however. In ruling that plaintiffs have standing, we may have only traced a fine line between lack of standing and lack of merits. As we explain below, the trial judge may have strayed over that line and yet reached the right result.

The plaintiffs point to no other source except art. 7, § 17 and art. 8, § 3 of our Constitution as the basis for their right to bid for supplying crushed gravel to the districts. Thus, the legal source of their protected right or "status" is the same as the source of their alleged injury, because, they contend, the districts violated these same constitutional provisions by entering into an installment contract for the purchase of gravel crushing equipment. We will address the plaintiffs' arguments relating to the basis of their right to supply, or their right to compete to supply, gravel to the districts. This is an examination into the merits of their claim.

■ Plaintiffs first contend that art. 7, § 17 prohibits the districts from expending proceeds from taxes on motor vehicle fuels and taxes and fees from motor vehicle registration on the purchase of gravel crushing equipment. For purposes of their motion for summary judgment and the defendants' motions to dismiss, the plaintiffs established that the districts were using motor vehicle fees and taxes for the purchase of the equipment. The plaintiffs contend that the districts cannot lawfully purchase gravel crushing equipment with funds which are dedicated "exclusively for the construction, repair, maintenance and traffic supervision of the public highways of this state and [for] the payment of the interest and principal of obligations incurred for said purposes."[4]

The districts argue, however, that the Idaho Supreme Court has clearly rejected the narrow view which the plaintiffs take of art. 7, § 17. We agree. In *Rich v. Williams*, 81 Idaho 311, 341 P.2d 432 (1959), our Supreme Court was asked to decide whether art. 7, § 17 prohibited the use of dedicated highway funds for the construction of an office building to be used jointly by the Department of Highways and the Department of Law Enforcement. The Supreme Court said:

> Art. 7, § 17, of our Constitution contains words of much broader import relating to the authorized expenditures of the highway fund, than does the Idaho Admission Bill as to expenditure of incomes on the permanent school funds. Those words of broad import contained in said section of the Constitution have been held to include all aspects of laying out, opening, construction and maintenance of an efficient highway system, ... including housing facilities requisite for the proper housing and protection, and the functioning of the myriad of activities necessarily attendant to carrying out the objectives of such section of the Constitution....

81 Idaho at 322, 341 P.2d at 438 (citations omitted). We believe that *Rich* supports the districts' position. The plaintiffs have failed to show that the purchase of the equipment with dedicated highway funds was prohibited by art. 7, § 17 of the Idaho Constitution. It follows that art. 7, § 17 creates no right in the plaintiffs which was abridged by the districts' purchase and operation of the equipment.

■ There remains the question of whether the districts' alleged violation of art. 8, § 3 affords a basis for the relief sought by plaintiffs. We have already held that it was not unlawful to use dedicated

**4.** For the purpose of the "standing" issue, the implicit argument is that if art. 7, § 17 prohibits highway districts from purchasing major items of equipment such as gravel crushers with dedicated funds, then art. 7, § 17 operates to create and protect the right of private contractors, such as the plaintiffs, to provide the crushed gravel needs of the districts. A similar argument was made, successfully, by the plaintiffs in

*Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970) (the Association was held to have standing to challenge the legality of a government regulation which permitted national banks to engage in the business of providing data processing services in competition to the members of the Association).

highway funds to purchase the equipment. Plaintiffs have not argued that the acquisition and operation of such equipment by the district is unlawful per se, only that the *manner* of its purchase in this instance violated that part of art. 8, § 3 which we have quoted in footnote 1. The trial court did not decide whether the installment contract between the districts and the bank for the purchase of the equipment violated the constitutional limitations on incurring indebtedness or liability exceeding the yearly income and revenues of the districts for one or more of the years involved in the purchase.

Assuming, but not deciding, that such a violation occurred, the plaintiffs have not shown how their right to bid is derived from art. 8, § 3. To prevail on the merits, and in order to obtain the declaratory and injunctive relief they seek, they must show that art. 8, § 3 gives them a protected "legal interest." Notwithstanding that plaintiffs purport to represent the taxpayers' interests, as well as their own, the ultimate interests they seek to protect through this action are their own, and such interests may or may not coincide with the interests of other taxpayers of the districts.

We believe the trial court correctly determined that the only claimed injury is being deprived of the right to bid to supply gravel. This claimed injury need not even be addressed by the trial court in ruling whether the districts violated art. 8, § 3. The actual interest which the plaintiffs seek to protect by this action is the right to engage in competitive bidding to supply the districts' needs for gravel. It is clear from reading art. 8, § 3 that it is not intended to create or to protect the "legal interest" which plaintiffs seek to protect by this action. Because plaintiffs have failed to show that either art. 7, § 17 or art. 8, § 3 gives them a protected legal interest, their claim for relief must fail on the merits. Accordingly, we hold that any error the trial court may have committed in ruling that plaintiffs lacked standing is harmless error.

## Cross–Appeal

▮ In their cross-appeal, the districts contend that the trial court erred in denying their attorney fee request. The trial court's order is a generic denial and makes no mention of any particular statute, rule, nor contractual basis for an attorney fee award which it might have considered. Neither do we have a transcript of the argument made by counsel outlining the basis for the request. The districts argue on appeal that I.C. § 12–120(3) was the basis for their request.

The pertinent part of I.C. § 12–120(3) provides that "in any commercial transaction unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs." The districts contend, therefore, that the language, "any commercial transaction," encompasses the contractor's challenge to the financing agreement for the rock crusher and entitles them to an attorney fee award. We disagree.

Our Supreme Court has ruled that "[a]ttorney's fees are not appropriate under I.C. § 12–120(3) unless the commercial transaction is integral to the claim, and constitutes the basis upon which the party is attempting to recover." *Brower v. E.I. DuPont de Nemours & Co.*, 117 Idaho 780, 784, 792 P.2d 345, 349 (1990). Moreover, we have recently held that "under the most expansive view of the statute [I.C. § 12–120(3) ] a lawsuit still must seek resolution of a dispute arising from a commercial *transaction* between the parties." *Idaho Newspaper Foundation v. The City of Cascade*, 117 Idaho 422, 424, 788 P.2d 237, 239 (Ct. App.1990).

In the case before us, the resolution sought by the contractors is of a dispute arising from a commercial transaction that did not take place; and, therefore, there is no commercial transaction between the parties that can be the basis for an attorney fee award under I.C. § 12–120(3). We hold that the trial court did not abuse its discretion in denying attorney fees.

We affirm the district court's order dismissing plaintiffs' action as well as its order denying any award of attorney fees.

WALTERS, C.J., concurs.

SILAK, Judge, concurring in the result.

I concur in the dismissal of the plaintiff's claims, but agree with the district judge that the plaintiffs lacked standing.