680 P.2d 873
**Ted ALLEN and D.P. Hathaway,**
**Plaintiffs-Appellants,**

v.

**BURGGRAF CONSTRUCTION CO.,**
**Defendant-Respondent.**

**No. 14057.**

Court of Appeals of Idaho.

April 30, 1984.

J.D. Hancock, Smith, Hancock & Moss, Rexburg, for plaintiffs-appellants.

Eugene L. Bush, Sharp, Anderson, Bush & Nelson, Idaho Falls, for defendant-respondent.

BURNETT, Judge.

Two rural landowners, Ted Allen and D.P. Hathaway, sued a highway construction contractor, Burggraf Construction, for damages allegedly resulting from alteration of an irrigation ditch. The district court—sitting without a jury—dismissed the action after the landowners had presented their evidence. The court determined, in a memorandum decision and in an order disposing of post-trial motions, that the evidence failed to show liability on the part of the contractor.

On appeal the landowners raise two issues: (1) Was the landowners' evidence sufficient to survive a motion for involuntary dismissal? (2) Did the district court abuse its discretion by declining to reopen the case so that the landowners could introduce further evidence? Because each question is answered in the negative, we uphold the court's order of involuntary dismissal.

I

We first consider the sufficiency of the landowners' evidence. Our standard of review is determined by I.R.C.P. 41(b). This rule allows a defendant to move for involuntary dismissal after the plaintiff's presentation of evidence "in an action tried by the court without a jury ... on the ground that upon the facts and the law the plaintiff has shown no right to relief." The judge, as sole trier of the facts, is not required to construe evidence favorably to the plaintiff. *Sorenson v. Adams*, 98 Idaho 708, 571 P.2d 769 (1977). Rather, he may evaluate the evidence and choose the inferences to be drawn. The court must determine whether the evidence, as so evaluated, is sufficient to show a right to the relief sought. We will not disturb that determination unless it is shown to be clearly erroneous.

Here the evidence focused upon delivery of water to the landowners' property from an irrigation canal near a highway construction project. The contractor had acquired a right to excavate gravel from land crossed by a ditch connecting the canal

with the landowners' properties. The contractor relocated the ditch during the spring of 1973, before the irrigation season. That summer the contractor expanded the gravel pit and did further work on the ditch at its new location.

The landowners asserted that they had suffered crop losses because the new ditch was negligently constructed, causing it to deliver less water than had the old ditch. In its memorandum decision on the Rule 41(b) motion, the district court found that negligence by the contractor had not been shown. In post-trial motions, the landowners invited attention to I.C. § 42–1207, which provides that a change in the location of an irrigation ditch "must be made in such a manner as not to impede the flow of the water therein." Upon this statute the landowners urged that liability for diminished water flow need not be based upon negligence. However, in its order on the post-trial motions, the district court made a supplementary finding that "[t]here was a satisfactory delivery of water soon after the construction."

We deem it clear that whether liability was predicated upon negligence, or upon violation of I.C. § 42–1207, the landowners were required to show that relocation of the ditch actually caused a diminished flow of water to their properties. Proof of causation is essential to invoke the statute. Similarly, to establish liability in a negligence action, a plaintiff must prove a causal connection between the defendant's breach of duty and the plaintiff's injuries. *E.g., Alegria v. Payonk*, 101 Idaho 617, 619 P.2d 135 (1980).

The landowners testified that the new ditch delivered inadequate water at all times. However, on cross-examination, plaintiff Allen admitted that he did not run out of water until 1975. Plaintiff Hathaway acknowledged that he had an abundance of water in 1973. Another landowner who had used the ditch since June, 1973, but was not a party to this action, also testified. He said—using present tense at trial—"it's got so we can't hardly get a garden stream." However, he further

stated that during his first two years on the property he had "plenty" of water.

The contractor conceded that there were major water delivery problems after the first two years. But the contractor contended that these problems were produced by other causes, such as lack of maintenance of the new ditch. Maintenance was not the contractor's responsibility. *See* I.C. § 42–1202 (duty to maintain); *Earhart v. Wright*, 50 Idaho 270, 295 P. 630 (1931); *Crawford v. Inglin*, 44 Idaho 663, 258 P. 541 (1927). The landowners admitted that the new ditch had not been maintained.

Thus, the district court was confronted with conflicting evidence concerning the adequacy of water in 1973–74, and with conflicting inferences regarding the cause of an undisputed water shortage starting in 1975. The court might have inferred that the water shortage resulted from construction defects in the new ditch; but it also could have inferred that the shortage was attributable to such other causes as lack of maintenance. Resolving conflicts in the evidence, and choosing between permissible inferences, are tasks uniquely committed to the trial court. We find no clear error in the district court's performance of those tasks in this case. Consequently, we sustain the court's determination, under Rule 41(b), that the landowners failed to prove a right to the relief sought.

## II

We next consider whether the landowners should have been allowed to reopen their case to cure the insufficiency of evidence. Parenthetically, we note that the district court did permit the landowners to reopen their case once. On that occasion, they simply adduced evidence that Burggraf Construction was a proper defendant. Previously there had been some confusion in the evidence as to whether the company, Mr. Burggraf himself, or some other entity actually had been responsible for relocating the ditch. However, the court later refused to allow a second reopening.

■ In general, permitting a party to reopen its case rests within the sound discretion of the district court. We will not reverse that decision absent an abuse of discretion. *Smith v. Smith,* 95 Idaho 477, 511 P.2d 294 (1973). A party seeking to reopen must show some reasonable excuse. *Bank of Idaho v. Colley,* 103 Idaho 320, 647 P.2d 776 (Ct.App.1982). Excuses which may persuade a district court to reopen are "oversight, inability to produce the evidence, or ignorance of the evidence." *Id.* at 324, 647 P.2d at 780. Those excuses are not claimed here.

■ The second reopening was requested in order to allow the landowners to put a state engineer on the witness stand. The engineer was expected to testify that the contractor had been solely responsible for relocation and construction of the new ditch. The purpose of the testimony was to negate a contention by the contractor that the State of Idaho had been responsible because it provided plans and specifications for the construction project. There was no showing that such testimony was unavailable earlier, during trial. Moreover, the testimony would not have cured the insufficiency of evidence to show a causal link between relocation of the ditch and the landowners' subsequent water delivery problems. Therefore, we hold that the district court did not abuse its discretion in refusing to reopen the case a second time, to receive the engineer's testimony.

The district court's order of involuntary dismissal is affirmed. Costs to respondent, Burggraf Construction Co.

WALTERS, C.J., and SWANSTROM, J., concur.