715 P.2d 1019

J.P. STAGGIE, Plaintiff-Appellant,

v.

IDAHO FALLS CONSOLIDATED HOSPITALS, INC., an Idaho corporation, Defendant and Third-Party Plaintiff, Respondent and Cross-Appellant,

v.

SERVICEMASTER INDUSTRIES, INC., a Delaware corporation, Third-Party Defendant and Cross-Respondent.

No. 15946.

Court of Appeals of Idaho.

March 5, 1986.

**350**

Spencer Daw, Idaho Falls, for plaintiff-appellant.

Lary S. Larson (Hopkins, French, Crockett & Springer), Idaho Falls, for defendant and third-party plaintiff, respondent and cross-appellant Idaho Falls Consol. Hospitals, Inc.

R. Vern Kidwell (Holden, Kidwell, Hahn & Crapo), Idaho Falls, and Lawrence C. DiNardo and James A. Burns, Jr. (Seyforth, Shaw, Fairweather & Geraldson), Chicago, Ill., for third-party defendant and cross-respondent Servicemaster Industries, Inc. (brief only).

BURNETT, Judge.

This appeal comes to us from a judgment involuntarily dismissing a suit for wrongful termination of employment. The employee, J.P. Staggie, was discharged for falsification of records. He contends that his activities had been authorized by a supervisor and that the discharge was motivated by bad faith. We affirm the judgment.

Staggie was employed as a maintenance engineer by Idaho Falls Consolidated Hospitals, Inc. His training and supervision were furnished by a separate entity, Servicemaster Industries, Inc., under contract with the hospital. When Staggie reported for work on December 16, 1983, he was asked whether he planned to attend a Christmas party for maintenance employees later that day. Staggie replied that his shift hours would not allow him to do so. Another employee offered to "swap" time. Staggie asked his supervisor whether this would be "okay." The supervisor responded to the effect, "Well, I don't know what you are doing," or "I don't know nothing about it." Staggie interpreted this to mean that the time swapping was approved and he left work early. However, he wrote in his time records that he had worked a full shift.

Several days later, the head of the hospital's maintenance department discovered the discrepancy in work hours recorded. He had attended the Christmas party and had seen Staggie there. Although the department head merely reprimanded Staggie, the hospital subsequently decided to fire him. Staggie sought review of this decision through grievance procedures outlined in a hospital manual, but received no response. Staggie then sued the hospital, alleging breach of his employment contract, defamation, and intentional or negligent infliction of emotional distress. The hospital denied these allegations and filed a third-party complaint against Servicemaster, seeking indemnification if liability was found to exist. The district court entered summary judgment against the claims for defamation and emotional distress. That ruling has not been challenged in this appeal. The court held a bench trial on the claim for wrongful termination. After Staggie presented his case in chief, the hospital moved for involuntary dismissal under I.R.C.P. 41(b). The motion was

granted and judgment was entered accordingly. This appeal followed.[1]

■ Our standard of appellate review, when a judgment is based upon involuntary dismissal under I.R.C.P. 41(b), requires clarification. In *Allen v. Burggraf Construction Co.*, 106 Idaho 451, 452, 680 P.2d 873, 874 (Ct.App.1984), we stated:

[Rule 41(b)] allows a defendant to move for involuntary dismissal after the plaintiff's presentation of evidence "in action tried by the court without a jury ... on the ground that upon the facts and the law the plaintiff has shown no right to relief." The judge, as sole trier of the facts, is not required to construe evidence favorably to the plaintiff. *Sorenson v. Adams*, 98 Idaho 708, 571 P.2d 769 (1977). Rather, he may evaluate the evidence and choose the inferences tc be drawn. The court must determine whether the evidence, as so evaluated, is sufficient to show a right to the relief sought. We will not disturb that determination unless it is shown to be clearly erroneous.

The last quoted sentence suggests that the "clearly erroneous" standard, applicable to findings of fact, also will be applied to a mixed question of law and fact—i.e., whether the facts as found are sufficient to invoke a legal right to relief.

Articulating the proper review standard for mixed questions of law and fact has proved to be a vexing task for state and federal appellate courts. *See* cases cited in Burnett, *Standards of Appellate Review*, IDAHO APPELLATE HANDBOOK § 3.2.2 (Idaho Law Foundation, Inc. 1985). There is support for a broadly deferential standard of the kind suggested in *Allen.* However, we think it better to differentiate among the fact-finding, law-stating and law-applying functions of the trial courts. Appellate judges should defer to findings of fact based upon substantial evidence, but they ought to review freely the conclu-

sions of law reached by stating legal rules or principles and applying them to the facts found. *See, e.g., City of Burley v. McCaslin Lumber Co.*, 107 Idaho 906, 693 P.2d 1108 (Ct.App.1984). Accordingly, in the present case, we will uphold factual findings made by the district court in granting the motion for involuntary dismissal, so long as the findings are not "clearly erroneous." We will review freely any statements of law and the court's conclusion that the facts as found did not entitle Staggie to any relief.

■ We first consider Staggie's contention that falsification of time records was authorized by his supervisor. This contention presents a question of fact. The district court found that Staggie's conduct "was in violation of the [hospital's] rules and was not condoned, authorized or consented to by the [hospital]." The evidence at trial disclosed that a practice of time-swapping had evolved in the maintenance department with the supervisor's knowledge. However, Staggie conceded knowing that the practice was against hospital policy. There was no evidence that the supervisor had authority to authorize the practice. Moreover, the evidence failed to show that falsification of records, concealing a time swap, had been approved. Consequently, the court's finding that Staggie engaged in unauthorized conduct is supported by the record. It is not "clearly erroneous" and it will not be disturbed.

■ We now turn to the contention that Staggie was discharged in bad faith. Whether bad faith would entitle an employee to relief is a question of law. Whether bad faith actually existed in this case is a question of fact.

Staggie was an employee at will. His employment agreement was for an indefinite duration and it imposed no limitation upon potential reasons for discharge. Our Supreme Court has held that either the employer or the employee may terminate

---

1. As a defensive measure, the hospital cross-appealed from that part of the judgment dismissing the third-party complaint against Servicemaster. Because the third-party complaint is moot in the absence of hospital liability, we need not address the cross-appeal in this opinion.

such an employment agreement at any time without liability, except that the employer may not discharge the employee for a reason contravening public policy. *MacNeil v. Minidoka Memorial Hospital*, 108 Idaho 588, 701 P.2d 208 (1985); *Jackson v. Minidoka Irrigation District*, 98 Idaho 330, 563 P.2d 54 (1977). The public policy exception has been held to protect employees who refuse to commit unlawful acts, who perform important public obligations, or who exercise certain legal rights or privileges. Note, *Protecting Employees at Will Against Wrongful Discharge: The Public Policy Exception*, 96 HARV.L. REV. 1931 (1983); Lopatka, *The Emerging Law of Wrongful Discharge—A Quadrennial Assessment of the Labor Law Issue of the Eighties*, 40 BUS.LAW. 1 (1984). Staggie's conduct bears no resemblance to any of these protected activities.

Staggie urges that we broaden the public policy analysis to focus not merely upon the employee's activities but also upon the employer's motivation for discharge. Indeed, our Supreme Court in *Jackson* cited *Monge v. Beebe Rubber Co.*, 114 N.H. 130, 316 A.2d 549 (1974), and said that "termination by the employer of a contract of employment at will which is motivated by bad faith or malice or based on retaliation is not in the best interest of the economic system or the public good and constitutes a breach of the employment contract." 98 Idaho at 334, 563 P.2d at 58. However, *Monge* later was interpreted in *Howard v. Dorr Woolen Co.*, 120 N.H. 295, 414 A.2d 1273, 1274 (1980), as referring to only those situations "where an employee is discharged because he performed an act that public policy would encourage, or refused

to do that which public policy would condemn." *See also Bergeron v. Travelers Insurance Co.*, 125 N.H. 107, 480 A.2d 42 (1984). Consequently, it is doubtful that the public policy exception to the rule of liability-free discharge has grown to encompass "bad faith" firings of employees whose activities were not otherwise worthy of judicial protection.

The thrust of Staggie's argument is that the public policy exception should be so extended. But this case affords no factual predicate for reaching that far. The district court made no finding of bad faith. Staggie's sole claim of bad faith was that the hospital failed to follow a grievance review procedure and thus breached an implied duty to discharge only in good faith. However, Staggie failed to introduce the manual into evidence. Neither did he undertake to show that his discharge actually was the product of an improper motive. We conclude that the district court did not err by failing to find that the hospital had acted in bad faith.[2]

The judgment entered upon involuntary dismissal of Staggie's complaint is affirmed. Costs to the respondent hospital. No attorney fees on appeal.

WALTERS, C.J., and SWANSTROM, J., concur.

---

**2.** The court made a "finding" that the hospital had assumed no contractual duty to act in good faith. The court did not consider whether such a duty is implied as a matter of law. However, even if there were an implied duty, it would not affect our conclusion that the district court was furnished insufficient evidence to find bad faith in fact.