849 P.2d 118

**John R. BEAL, II, d/b/a Medalist Cleaning, Plaintiff–Respondent,**

v.

**Daniel GRIFFIN, d/b/a Shine–A–Blind America, Defendant–Appellant.**

**No. 19788.**

Court of Appeals of Idaho.

March 9, 1993.

Service, Gasser & Kerl, Pocatello, for defendant-appellant. Steven V. Richert, argued.

Herzog & Roche, Pocatello, for plaintiff-respondent. Vern E. Herzog, argued.

WALTERS, Chief Judge.

This is an appeal from an action to recover on a contract to purchase goods. John Beal bought a window-blind cleaning machine from Daniel Griffin. The machine was damaged during shipping and was purportedly not the machine Beal ordered. When Griffin failed to remedy the loss, Beal sued. After a bench trial on the merits, the court awarded to Beal the price of the machine plus costs and attorney fees. Griffin appeals, arguing that the court erred when it held that an oral agreement between the parties superseded Griffin's written sales order, which he asserts contained the contract terms. We affirm.

*Facts and Procedural Background*

In November, 1989, Beal operated Medalist Cleaning, a carpet cleaning business in Pocatello, Idaho. After seeing an advertisement in a national trade magazine, he bought a window-blind cleaning machine

from Griffin, president of Shine–A–Blind America, a company operating out of Warren, Michigan. Beal arranged financing of the $18,000 purchase price through Delta Financial Group (Delta). Griffin told Beal that the best way to ship the machine was by "electronic" means, meaning with the special care given to sensitive pieces of electronic equipment, and that this would cost $400. Beal agreed to pay the extra shipping cost, and Griffin stated that he would place the machine on a pallet and ship it by continuous ground transportation because this method would minimize the chance of damage. He also stated, upon request by Beal, that he would purchase insurance. In a later affidavit, Griffin stated that he purchased $20,000 worth of coverage.

Griffin prepared a sales order dated December 19, 1989. This document became Exhibit K at trial, indicated that delivery was F.O.B. Detroit, and was delivered with the machine. Delta, acting for Beal and without his help, sent Griffin a purchase order agreement dated December 27, 1989. The purchase order differed from the sales order by providing that delivery was to be F.O.B. at Beal's address in Pocatello, and expressly placed the risk of loss on Griffin. Although the purchase order later became the basis for a partial summary judgment for Beal, the court found the summary judgment to be erroneous and ordered a trial on the merits. At trial, the court excluded the purchase order from evidence due to a lack of foundation.

The machine was shipped from Detroit, Michigan and arrived damaged in Pocatello on January 17. Beal immediately telephoned Griffin. Beal and another witness, Mr. Simmons, who also was on the phone with Griffin and Beal, testified that Griffin offered to reduce the purchase price by $3,500 to cover repairs and pursue the shipping companies for any resulting deficiency. Griffin urged Beal to sign for and accept the machine based on Griffin's assurances that the damage would be remedied, because Griffin needed Beal's signature in order for Delta to release payment. Beal testified that Griffin stated he would get the money from the shipper within a month. Beal signed the bill of lading that accompanied delivery with the notation that he wanted the machine repaired or replaced. Several days later, he signed Delta's form acknowledging satisfactory delivery and releasing payment. Beal and Simmons testified that Beal did not accept Griffin's offer to reduce the purchase price by $3,500 because Beal wanted to have the machine inspected. Later, Beal also determined that the machine delivered to him was not the one he ordered.

Beal received repair estimates ranging from $7,800 to replace the frame to $14,000 or $15,000 if the transducers were damaged. Beal's attempts to use the machine were unsuccessful. He also testified that the damages prevented the machine from being portable, when portability had been a characteristic which had motivated the purchase. A year went by and Griffin had not obtained money from the shipper. Beal was also unsuccessful in pursuing an action against the shipper. No insurance money was produced, and it became apparent that Griffin had not purchased insurance for the machine. Ultimately, Delta repossessed the machine and Beal sued Griffin.

After answering Beal's complaint, Griffin submitted a written motion for summary judgment. At the same time, Beal made an identical oral motion. Beal argued that Griffin had breached the contract of sale by delivering non-conforming goods and had breached express and implied warranties. Initially, the court partially granted Beal's motion, but later rescinded the order granting that motion. A bench trial on the merits ensued. The court found for Beal and awarded to him a total of $25,000 for the cost of the machine, shipping, court costs and attorney fees. This appeal followed.

*Issues*

Griffin raises several issues on this appeal. They may be summarized as: (1) Did the trial court err in concluding that the contract existing between the parties was established by an oral agreement rather than by a writing as required by the stat-

**448**

ute of frauds? (2) Did the court err in failing to find that Griffin discharged his obligation to Beal by offering to reduce the sales price, to pursue compensation from the shipper and to reimburse Beal for any loss exceeding the sales price? (3) Did the court err in denying Griffin's motion for a continuance of the trial? and (4) Did the court err in awarding costs and attorney fees to Beal rather than to Griffin?

### Standard of Review

Appellate courts defer to findings of fact based upon substantial evidence, but review freely the conclusions of law reached by stating legal rules or principles and applying them to the facts found. *Staggie v. Idaho Falls Consol. Hospitals*, 110 Idaho 349, 351, 715 P.2d 1019, 1021 (Ct.App. 1986); *See, e.g., City of Burley v. McCaslin Lumber Co.*, 107 Idaho 906, 693 P.2d 1108 (Ct.App.1984). Accordingly, we will uphold factual findings made by the district court so long as the findings are not "clearly erroneous." *Id.* We will review freely any statements of law and the court's conclusion that the facts as found entitled Beal to relief. *Id.*

### Statute of Frauds

At trial, Griffin presented the written sales order as the contract between the parties. On appeal, he asserts that the statute of frauds, I.C. § 28–2–201(1) and (2), establishes that the sales order controls and because Beal did not reject the writing within ten days after receiving it with the machine, he must be deemed to have accepted its terms.[1]

As a contract for the sale of movable goods with a price of $500 or more, this transaction is governed by article two of the Idaho Uniform Commercial Code. Both Griffin and Beal are deemed to be "merchants" under the code and are held to different standards than consumers. *See*

I.C. § 28–2–104. The statute of frauds provides that a contract for the sale of goods priced at $500 or more must be in writing to be enforceable and must be signed by the party against whom enforcement is sought. I.C. § 28–2–201(1). The party receiving the writing need not expressly accept or reject it. In a transaction between merchants,

> if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within (10) days after it is received.

I.C. § 28–2–201(2). This method of accepting a contract is limited, however. In a transaction between merchants, the effect of not responding within ten days merely takes away

> from the party who fails to answer the defense of the Statute of Frauds; the burden of persuading the trier of fact that a contract was in fact made orally prior to the written confirmation is unaffected.

I.C. § 28–2–201 official comment 3.

▉ Beal's failure to object to the sales order only serves to take away from him the defense of noncompliance with the statute of frauds. Acceptance of payment or goods is deemed to be an admission by both parties that a contract exists and renders admissible oral evidence of other terms of the contract. *See Hoff Companies, Inc. v. Danner*, 121 Idaho 39, 43, 822 P.2d 558, 562 (Ct.App.1991), *citing* I.C. § 28–2–201 official comment 2. Code section 28–2–201(3)(c) states that a contract which does not satisfy the writing requirement but which is valid in other respects is enforceable "with respect to goods for which payment has been made and accept-

---

1. We note that the statute of frauds is an affirmative defense which must be raised specifically in the pleadings. I.R.C.P. 8(c). Failure to specifically raise the matter may constitute a waiver of the defense. *See Hartwell Corp. v. Smith*, 107 Idaho 134, 686 P.2d 79 (Ct.App. 1984). Griffin failed to raise the defense in his answer, and the record does not indicate that it was raised specifically in other pleadings. However, the defense was asserted at trial and appears to have been addressed with implicit consent by the court, a practice within the court's inherent powers. *Good v. Hansen*, 110 Idaho 953, 719 P.2d 1213 (Ct.App.1986).

ed...." Even partial payment for a non-divisible unit permits a party to prove and recover on the oral contract. *Paloukos v. Intermountain Chevrolet Co.,* 99 Idaho 740, 745, 588 P.2d 939, 944 (1978), *citing* § 28–2–201(3)(c). These rules reflect the concept that the statute of frauds applies only to executory contracts, not those which have been performed. 67 AM. JUR.2d *Sales* § 180, at 453 (1985).

The court held that based on the testimony and documentary evidence presented at trial, the sales order was not the contract between the parties. The court stated that the sales order "was prepared by the defendant and the plaintiff didn't sign it. The exhibit is merely a document indicating what was shipped, what was purchased, and the sales price." The document states the machine sold, quantity, price, shipping costs, manner of shipping, and that shipping was F.O.B. Detroit, which according to the code, means that the risk of loss was on Beal once the machine was delivered to the shipper in Detroit. *See* I.C. §§ 28–2–319, 2–509. However, Beal's name is only listed as the place of delivery. Delta is listed as the purchaser. Beal did not sign the document and, in fact, there was no place for him to sign it, and no indication that he should sign the instrument.

The lack of Beal's signature is not dispositive, however, and the court erred to the extent it focused on that fact. According to I.C. § 28–2–201 official comment 3, Beal is precluded from raising the defense of a lack of signature because he did not object to Griffin's sales order within ten days after receipt. Although not labelled so by the parties or the court, the signature is a formality required by the statute of frauds. Still, Beal may present evidence that an oral agreement was reached before the written confirmation was prepared.

The negotiated bargain in this case was that Griffin would properly package the machine for safe shipment, purchase insurance, deliver the merchandise by electronic means and continuous ground transportation, and provide the machine Beal ordered. The evidence in the record supports the court's finding that Griffin failed to perform these terms of the contract.

Ultimately, the court concluded that Beal accepted the goods. The court stated that he accepted, however, only upon certain conditions, that he later revoked acceptance, and that he was entitled to recover the purchase price. The court based its decision on I.C. § 28–2–711(1), which provides that where the buyer rightfully rejects or justifiably revokes acceptance of goods he may cancel the contract and recover the price paid. We conclude, as the court did, that Beal could rightfully revoke acceptance given the non-conformity of the machine and Griffin's failure to remedy the damage. Although we conclude that the court correctly relied on I.C. § 28–2–711(1), we choose to explain our decision with more detailed citation to the code.

First, we point out that goods may be accepted several ways. A buyer accepts goods when he, after a reasonable opportunity to inspect: signifies to the seller that the goods are conforming or that he will keep them in spite of their non-conformity; or fails to make an effective rejection under I.C. § 28–2–602(1); or does any act inconsistent with the seller's ownership. I.C. § 28–2–606. Acceptance of the goods precludes rejection. I.C. § 28–2–607. Similarly, if the buyer accepts goods knowing of their non-conformity, the acceptance cannot be revoked because of the non-conformity. *Id.* This rule is softened, however, if the acceptance was based on the reasonable assumption that the non-conformity would be seasonably cured. *Id.* Stated another way, the buyer may revoke acceptance if the non-conformity of the goods substantially impairs their value, and if the buyer has accepted the goods on the reasonable assumption that the non-conformity would be cured and it has not been seasonably cured. I.C. § 28–2–608(1)(a). Acceptance can only be revoked within a reasonable time after the buyer discovers or should have discovered the ground for the revocation. I.C. § 28–2–608(2).

Here, Beal did not effectively reject the machine. A buyer rejects non-conforming

goods by taking affirmative action to avoid acceptance and by notifying the seller of the rejection within a reasonable time. I.C. § 28-2-602. Beal did not notify Griffin of a rejection, but called to inform Griffin of the damage and to see what could be done. He may have performed an act inconsistent with Griffin's ownership by trying to use the machine. He also signed that he accepted the goods. It is clear, however, that his acceptance was made only after telling Griffin that the machine was non-conforming and he wanted it repaired or replaced.

Griffin responded by assuring Beal that the damages would be remedied if Beal would sign Delta's form acknowledging satisfactory delivery and releasing payment to Griffin. The court stated "[b]asically, the defendant told the plaintiff trust me, sign the form, everything is going to be okay. So the plaintiff relied on this assertion by the defendant and [later] signed the form which released full payment to the defendant." This finding is supported by the evidence. Further, it is clear that Griffin never repaired or replaced the machine. Griffin's failure to remedy the non-conformity enabled Beal to revoke his acceptance. See I.C. §§ 28-2-607, 2-608, 2-711.

Griffin argues that the contract term "F.O.B. Detroit" shifted the risk of loss to Beal when Griffin delivered the machine to the shipper in Detroit. This argument is not meritorious. "The seller by his individual action cannot shift the risk of loss to the buyer unless his action conforms with all the conditions resting on him under the contract." I.C. § 28-2-510 official comment 1. Griffin did not meet the contract conditions. He did not package the machine as he was supposed to, did not place it on a pallet, and he did not ship by electronic means. Although not cited, we note I.C. § 28-2-510(1), which states that where a delivery of goods so fails to conform to the contract as to give a right of rejection, the risk of loss remains on the seller until cure or acceptance. Here there was an acceptance, followed by a revocation. Moreover, I.C. § 28-2-510(2) states that where a buyer rightfully revokes acceptance he may, to the extent of any deficiency of insurance for the goods, treat the risk of loss as having rested on the seller from the beginning. The court found that Griffin had failed to purchase insurance for the machine. There is not sufficient evidence to disturb this finding. Thus, there was a deficiency of insurance in this case and Beal could treat the risk of loss as resting on Griffin from the outset.

### Offer to Reduce Price

Griffin argues that the court erred when it held that he had not discharged his obligation when he offered to reduce the purchase price by $3,500 and reimburse Beal for any loss exceeding $3,500. Griffin asserts that Beal's testimony on this issue was "inherently unbelievable" and that the court erred in considering it. Griffin also argues that Beal's conduct falls within I.C. § 28-2-613(b), which limits the buyer's remedies upon inspection and acceptance. Beal disputes this claim on the merits, but also on the ground that Griffin did not raise this defense in his pleadings or in argument to the court. Our review of the record indicates that this issue was elicited through testimony at trial and addressed by counsel during closing argument, albeit briefly. Thus, we consider it proper to address the matter on appeal.

Addressing the first argument, we do not find Beal's testimony inherently unbelievable or the court's interpretation of the testimony erroneous. Beal testified that he did not want to accept the price reduction before the machine was inspected. He apparently felt that the repairs may have exceeded $3,500 and did not want to settle for less than the full cost of repairs considering his view that Griffin was not acting responsibly. Griffin argues that Beal's testimony is contradictory because Beal later accepted the machine without a price reduction but only with Griffin's promise to pursue the shipping companies. We do not find this contradiction to be dispositive. Beal, the apparently less sophisticated business person in this transaction, may not have presented the most logical argument for not accepting the price reduction, but this does not make his testimony incredible.

Next, Griffin argues that I.C. § 28–2–613(b) requires that Beal had to accept the price reduction. This section provides that where goods are identified to a contract and suffer damage without fault of either party before the risk of loss passes to the buyer, then if the loss is partial or the goods have so deteriorated as no longer to conform to the contract, the buyer may demand inspection and may treat the contract as avoided, or accept the goods with due allowance from the contract price for the deterioration, but without further right against the seller.

■ Griffin's reliance on this section is misplaced. It is the *buyer's* choice to treat the contract as avoided or accept the goods with allowance from the contract price. The seller cannot force the buyer to make the election. Furthermore, this section applies only when the goods are damaged through no fault of either party before the risk of loss passes to the buyer. In this instance, fault includes "negligence and not merely wilful wrong." I.C. § 28–2–613 official comment 1. Here, the record supports the court's finding that Griffin did not place the machine on a pallet for shipping, he merely wrapped the sides in a single layer of thin cardboard, and he did not ship by the method for which Beal contracted and paid.

### Continuance

■ Griffin argues that the court erred when it denied his motion for a continuance and that the denial prevented his attendance at trial. He avers that the case proceeded from complaint to trial with "unprecedented speed," specifically, ten months; that no harm would have resulted from granting the continuance; and that the court erred in allowing the trial to go forward without including the third-party shipper.

A motion for a continuance in a civil action is addressed to the sound discretion of the trial court. *Krepcik v. Tippett*, 109 Idaho 696, 699, 710 P.2d 606, 609 (Ct.App. 1985). The exercise of discretion will not be disturbed on appeal unless it was so arbitrary that it deprived a litigant of a fundamentally fair trial. *Id.* Our Supreme Court has set forth certain criteria by which the trial court's decision may be judged. If the motion for a continuance is made in good faith and because a material witness cannot attend, and

shows that reasonable diligence has been exercised to obtain the presence of the witness, shows substantially to what the witness would testify and that such testimony is material, and shows a sufficient reason for the absence of the witness by the affidavit of an affiant in position to know the facts, then it is an abuse of discretion for the trial court to refuse to grant a continuance.

*Pauley v. Salmon River Lumber Co.*, 74 Idaho 483, 490, 264 P.2d 466, 470 (1953); *see also Werry v. Phillips Petroleum Co.*, 97 Idaho 130, 540 P.2d 792 (1975); *Dept. of Labor and Industrial Services v. East Idaho Mills*, 111 Idaho 137, 721 P.2d 736 (1986).

Preliminarily, it is helpful to explain in greater detail the procedural history of this case. Beal filed his complaint in February 1991. After several motions, Griffin filed his answer on July 18, 1991. Within the month, the court scheduled trial for August 21, 1991. The parties stipulated to a continuance and the court reset trial for December 12, 1991. The court ordered that it would not entertain any pretrial motions within twenty days of trial. On November 15, Griffin filed a motion to file a third party complaint to include the shipper in the action. The motion was granted three days later. It was not until November 29, 1991, that Griffin filed a motion for continuance. In his affidavit supporting the motion, Griffin stated that he could not attend trial because he had a sales meeting in Michigan on the same day. The court agreed to reset the trial for December 17, 1991. Griffin's counsel then left a note for the court clerk that Griffin also would be unable to attend trial on that day. The court then reset trial for December 12. On December 9 counsel for Griffin moved to withdraw and the motion was denied. At the same time, Griffin's counsel moved to have withdrawn the partial summary judg-

ment previously granted to Beal. This motion was granted. On December 11, the court dismissed the third party complaint because the shipper would have only one day to prepare for trial, but allowed Griffin to pursue the shipper at a later date. On the morning of trial, Griffin's counsel again moved for a continuance. The court stated that because a trial date was originally set in July, a more timely motion to continue should have been filed.

First, we point out that proceeding from complaint to trial in ten months does not by itself present an abuse of discretion. In *Krepcik*, this Court found no abuse of discretion when the trial court denied a motion to continue and held trial six months after the complaint was filed. Second, although he was a material witness, Griffin has not satisfied the criteria discussed in *Pauley*. Griffin was unable to attend because of business meetings he had scheduled, even though his counsel was notified in July trial was set for December. It is not clear when Griffin first scheduled his sales meeting. The court apparently felt that Griffin was not acting in good faith when he requested the continuance and was treating Beal and the Court with a rather cavalier and disdainful attitude. The court also felt that Griffin had not acted with reasonable diligence to attend the trial or establish a sound reason for not attending. These findings are not clearly erroneous. Further, even though Griffin argues that the five weeks before trial "became a mash of motions," posturing by the parties, and rulings by the court, he does not establish how the flurry of activity prevented him from personally attending trial. Accordingly, we hold that the trial court did not abuse its discretion in denying Griffin's request for a continuance.

### Attorney fees

Griffin argues that the court erred when it awarded costs and attorney fees to Beal under I.C. § 12–120(3). This code section provides that in an action to recover on a contract for the sale of goods the prevailing party shall be allowed a reasonable attorney fee to be set by the court. Because we find the court's findings and con-

clusions to be proper, we affirm the court's award. Beal also requests costs and attorney fees on appeal. Because he has prevailed, he is entitled to such an award. I.C. § 12–120(3); I.A.R. 41; *Building Concepts, Ltd. v. Pickering*, 114 Idaho 640, 759 P.2d 931 (Ct.App.1988).

### Conclusion

Based on the foregoing, the judgment of the district court is affirmed. Costs and attorney fees are awarded to the respondent, John Beal.

SWANSTROM, J., and SILAK, Acting Judge, concur.