# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 44466

| | | |
|---|---|---|
| ACTION COLLECTION SERVICE, INC., an Idaho corporation, | ) ) ) | Opinion No. 61 |
| | ) | Filed: November 16, 2017 |
| Plaintiff-Respondent, | ) ) | Karel A. Lehrman, Clerk |
| v. | ) ) | |
| HARMONY L. BLACK, aka McCULLOUGH, | ) ) ) | |
| Defendant-Appellant. | ) ) ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. George D. Carey, District Judge.

Judgment of the district court, vacated.

Thomas J. Katsilometes, PLLC; Boise, for appellant. Thomas J. Katsilometes argued.

Shearer & Bonney, PC; Shaun R. Bonney, Boise, for respondent. Shaun R. Bonney argued.

_____

HUSKEY, Judge

Harmony L. Black appeals from the judgment awarding Action Collection Service, Inc. (ACS) an amount of $3,546.40 for a debt originally owed to the Idaho Department of Juvenile Correction (IDJC) which was then assigned to ACS. Black asserts the district court: (1) erred in finding that a contract existed between IDJC and ACS; (2) abused its discretion by determining that the hearing held in the district court constituted a hearing under Idaho Code § 20-524; and (3) erred in finding IDJC's assignment to ACS valid. The district court's judgment awarding ACS the amount of $3,546.40 is vacated.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

In September 2007, Black's minor child was placed in IDJC's custody. At that time, the magistrate did not order Black to reimburse IDJC for her child's support or treatment. While in custody, IDJC expended costs for the child's support and treatment. From time to time, IDJC sent notices to Black, asserting Black was obliged to contribute $235.00 a month to pay for her child's support and treatment pursuant to I.C. § 20-524. However, Black never agreed to pay that amount. Yet, in the last two months of the child's custody in IDJC, Black made two payments of $235.00 to IDJC. Black claimed those payments amounted to ransom for her child's release. Black's child was released from IDJC's custody in July 2009. Despite the absence of any court order requiring payment, IDJC determined it was entitled to $4,465.00 reimbursement from Black for its treatment and support of her child, which IDJC calculated according to the $235.00 monthly rate with a reduction for the two previous payments. At no point did IDJC request a court hearing to determine whether $4,465.00 was a reasonable sum of payment.[1] Rather, IDJC attempted, without success, to collect the reimbursement from Black.

IDJC then assigned Black's alleged debt to ACS in December 2009 pursuant to a blanket assignment agreement entered in May 2006 between IDJC and ACS. The first paragraph of that contract states the contract extends through May 2007. However, a later paragraph of the contract states the contract remains in force until terminated by giving fifteen days written notice. At no point did IDJC or ACS terminate the contract by providing written notice. After ACS attempted, without success, to collect from Black, ACS brought suit in March 2012 against Black to recover $4,465.00. In addition, ACS sought an additional 33 percent fee for collecting Black's alleged debt, in the amount of $1,473.45, pursuant to its contract with IDJC and I.C. § 67-2358(1)(b). ACS also sought pre-judgment interest on the alleged debt. The magistrate granted ACS's motion for summary judgment in the case, awarding $5,938.45 in principal, $1,306.47 in interest, $2,595.00 in attorney fees, and $118.00 in costs, for a total of $9,957.92. Black appealed the magistrate's decision and judgment to the district court. The district court vacated the judgment and remanded the case to the magistrate. ACS appealed the district court's

---

[1]    IDJC told Black in a letter that if she disagreed with the sum of payment, she was the party responsible to initiate a court hearing to establish the sum. As shown in Section B(1) below, this statement unlawfully shifted the burden of requesting a court hearing to Black.

decision. This Court affirmed the district court's decision in part and remanded the case to the magistrate court.

Upon remand, the magistrate conducted one full day of trial in February 2016, but then identified a conflict with the case and the trial was continued until July 2016, when it was resumed by an assigned district court judge. The district court entered judgment for ACS in the amount of $3,546.40, including a 33 percent collection fee in the amount of $884.40 under I.C. § 67-2358(1)(b), but did not grant pre-judgment interest because the principal amount was not mathematically or definitely ascertainable. The district court found that the blanket assignment agreement between IDJC and ACS remained in force during IDJC's 2009 assignment of Black's debt to ACS, found that the trial constituted a hearing under I.C. § 20-524, and entered judgment for ACS. Black timely appeals to this Court.

## II.

## STANDARD OF REVIEW

When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court correctly perceived the issue as one of discretion; acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and reached its decision by an exercise of reason. *Sun Valley Shopping Ctr., Inc. v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991).

In articulating the proper standard of review for mixed questions of law and fact, this Court will differentiate among the fact-finding, law-stating, and law-applying functions of the trial courts. *Staggie v. Idaho Falls Consol. Hosps.*, 110 Idaho 349, 351, 715 P.2d 1019, 1021 (Ct. App. 1986). Appellate judges defer to findings of fact based upon substantial evidence, but they review freely the conclusions of law reached by stating legal rules or principles and applying them to the facts found. *Id.* Where there is conflicting evidence, it is the trial court's task to evaluate the credibility of the witnesses and to weigh the evidence presented. *Desfosses v. Desfosses*, 120 Idaho 354, 357, 815 P.2d 1094, 1097 (Ct. App. 1991). Over questions of law, we exercise free review. *Kawai Farms, Inc. v. Longstreet*, 121 Idaho 610, 613, 826 P.2d 1322, 1325 (1992); *Cole v. Kunzler*, 115 Idaho 552, 555, 768 P.2d 815, 818 (Ct. App. 1989).

## III.

## ANALYSIS

Black makes several arguments on appeal. First, Black argues that IDJC's existence as a state agency violates the Idaho Constitution. Second, Black argues the blanket assignment agreement between IDJC and ACS terminated before the 2009 assignment. Third, Black contends IDJC never validly assigned a debt to ACS. Fourth, Black asserts the trial below did not constitute a hearing under I.C. § 20-524.

### A.    Black's Argument That IDJC Is an Unconstitutional State Agency Is Not Properly Preserved

Generally, issues not raised below may not be considered for the first time on appeal. *Sanchez v. Arave*, 120 Idaho 321, 322, 815 P.2d 1061, 1062 (1991). Black argues for the first time on appeal, in a footnote, that IDJC's existence is unconstitutional because IDJC is a separate state agency that was created in 1995, twenty years after the cut-off date for the creation of separate state agencies set forth in Article IV, § 20 of the Idaho Constitution. Because it was not raised below, this argument is not properly before this Court and will not be considered.

### B.    IDJC Did Not Make a Valid Assignment in 2009

#### 1.    A debt, as defined by I.C. § 67-2358 and in the context of I.C. § 20-524, is created only after due notice to a parent of a payment obligation, a court hearing, and a court order

ACS contends that Black's argument that no debt exists in this case is waived because it was not raised below. As stated above, issues not raised below may not be considered for the first time on appeal. *Sanchez*, 120 Idaho at 322, 815 P.2d at 1062. On this issue, however, Black made the argument to the trial court. Specifically, Black argued that IDJC had assigned a right to create a debt, not an existing debt. Further, Black argued that no debt yet existed because a debt, in the context of I.C. § 20-524, can only be created by a court order and that IDJC had no power to create a debt itself. Black's argument on appeal is based on compliance with I.C. § 20-524, just as was argued below. Thus, Black's argument is preserved for appeal before this Court.

ACS and Black dispute the meaning of debt as defined by I.C. § 67-2358 and within the context of I.C. § 20-524. Idaho Code § 67-2358 details the prerequisite requirements for a state agency, like IDJC, to make an assignment of debt to a private collection agency, like ACS. Among the requirements of a written contract and notice, I.C. § 67-2358 recognizes that a debt

4

must exist to be the subject of an assignment. I.C. § 67-2358(2)(a). The statute, in a somewhat tautological fashion, states, "the term 'debt' shall include all debts." I.C. § 67-2358(4).

ACS argues that the term debt should be interpreted to its broadest sense, citing dictionary definitions to argue that debt is created by any obligation to pay, assertion of an obligation to pay, whenever something is owed, when there is any liability on a claim, or when a party's conduct acknowledges an obligation to pay. Thus, ACS asserts that a debt was created when: 1) IDJC requested that Black pay IDJC for its services; 2) Black did not pay IDJC for those services; 3) Black made two payments to IDJC just before her child's release; or 4) ACS made the claim that Black was liable for the payment by filing a lawsuit.

Black, however, argues that I.C. § 20-524 provides the appropriate definition of debt for this specific circumstance because it details how IDJC may obtain reimbursement for its services. Idaho Code § 20-524(1) provides:

> Whenever a juvenile or juvenile offender is placed by the court in custody other than that of his or her parents or custodian, after due notice to the parent or other persons legally obligated to care for and support the juvenile or juvenile offender, and after a hearing, the court may order and decree that the parent or other legally obligated person shall pay in such a manner as the court may direct a reasonable sum that will cover in whole or in part the support and treatment of the juvenile or juvenile offender. If the parent or other legally obligated person willfully fails or refuses to pay such sum, the court may proceed against him for contempt, or the order may be filed and shall have the effect of a civil judgment.

According to I.C. § 20-524, Black asserts that to create an assignable debt under I.C. § 67-2358 for reimbursement of IDJC's services: (1) IDJC must give notice to a juvenile's parent of the parent's obligation to pay; (2) after notice to the parent, a court must conduct a hearing to determine a reasonable sum the parent shall pay; and (3) a court must order and decree that the parent pay that sum.

The plain language of I.C. § 20-524 makes clear that actionable debt for reimbursement of IDJC's services may only be created by following the procedure laid out in I.C. § 20-524. It is IDJC who must initiate this procedure because only IDJC is in a position to provide due notice to the parent. Further, the Juvenile Correction Act, of which I.C. § 20-524 is a subsection, supports the conclusion that IDJC must initiate this procedure. The Act created IDJC as a separate state agency. I.C. § 20-503. The Act states the legislature's intent was that IDJC operate by following the principle of holding "the parent accountable, where appropriate, through the payment of detention costs" for IDJC's supervision and confinement of a juvenile in

5

a secure facility.  I.C. § 20-501(4).  This statement indicates the legislature's desire for IDJC to advance parental accountability for a juvenile's action.  This statement of intent, paired with the text of I.C. § 20-524, mandates the conclusion that it is IDJC who must initiate the procedures found in I.C. § 20-524.  Thus, in order for IDJC to create an actionable debt for reimbursement of its services:  (1) IDJC must give notice to a juvenile's parent of the parent's obligation to pay; (2) IDJC must, after notice to the parent, initiate a court hearing to determine a reasonable sum the parent shall pay; and (3) a court must order and decree that the parent pay that sum.  Thus, to determine if IDJC's assignment to ACS was valid under I.C. § 67-2358, we must first consider whether IDJC followed the appropriate procedure for creating a debt in this case.

> **2.**     **Black had notice of IDJC's claim to payment, but IDJC never initiated a hearing under I.C. § 20-524, and a court never ordered Black to pay a reasonable sum**

Black does not contend that she lacked notice of IDJC's claim to reimbursement for providing support and treatment for her child while in IDJC's custody.  Indeed, from time to time, IDJC sent notices to Black making claims for reimbursement.  Black does contend, however, that IDJC failed to complete the rest of the procedure called for in I.C. § 20-524.  There is no dispute that before the trial initiated by ACS, no hearing occurred, initiated by either IDJC or ACS.  ACS argues, and the district court agreed, that the district court trial constituted a hearing under I.C. § 20-524.  But ACS initiated the alleged hearing, not IDJC.  Therefore, the order of payment resulting from that hearing does not comply with I.C. § 20-524.  Only upon a hearing initiated by IDJC, before suit, could a court validly order Black to pay IDJC a reasonable sum for reimbursement of its services.

At that hearing, the court must determine what constitutes a reasonable sum for the reimbursement for the care and treatment of Black's child.  The debt is that which the court ultimately orders and the order must be entered before any debt may be assigned or converted to a civil judgment.  While costs of services may accrue monthly, there is no debt which may be collected and assigned to a collection agency until IDJC has provided notice of hearing, the hearing has occurred, and the court has determined the amount of the debt.  Here, no such determination occurred before the debt was assigned to ACS.  Instead, IDJC unilaterally determined what it believed was a reasonable amount without any hearing or order and then assigned the debt to collection without any further proceedings.  This process is not authorized by the statute.

The hearing to determine and order the debt amount occurs first. Prior notice of the claimed debt, its method of calculation, and the hearing must be provided to the parent. Upon hearing, the court sets the debt. Only after following the statutes providing opportunity for the parent to pay may the debt be assigned for collection. Suit may thereafter occur for collection. Without question, the hearing held in this case, after years of litigation, could not constitute the hearing to order the amount of the debt. The district court erred in so holding. Because IDJC did not initiate a hearing with a court to determine a reasonable sum of reimbursement and because no court order of payment was entered against Black subsequent to such a hearing, IDJC never validly created a debt as defined by I.C. § 67-2358 and in the context of I.C. § 20-524.

**C.      IDJC Did Not Have a Debt to Assign in 2009 to ACS**

ACS asserts that IDJC assigned ACS a valid debt in 2009. Because a debt was never validly created by IDJC, this cannot be true. IDJC did not follow the procedures set forth in I.C. § 20-524 before its 2009 assignment. Because of IDJC's failure to adhere to I.C. § 20-524, it could not assign a debt to ACS in 2009 under I.C. § 67-2358. Thus, the alleged assignment to ACS was premature, invalid, and cannot serve as a basis for ACS's recovery in this case.[2]

**D.      Black Is Not Entitled to Attorney Fees**

Black requests attorney fees on appeal. Black's first appellate brief fails to assert a claim for attorney fees; instead, she raises the claim only in her reply brief. "Any party seeking attorney fees on appeal must assert such a claim as an issue presented on appeal in the first appellate brief filed by such party." I.A.R. 41. Consequently, Black is not entitled to attorney fees on appeal.

**IV.**

**CONCLUSION**

ACS cannot collect from Black because IDJC did not make a valid assignment of Black's alleged debt in 2009. We vacate the district court's judgment awarding ACS the amount of $3,546.40. Costs but not attorney fees are awarded to Black on appeal.

Chief Judge GRATTON and Judge GUTIERREZ **CONCUR**.

---

[2]      Black also asserts another ground for invalidating the 2009 assignment, arguing that the blanket assignment agreement between IDJC and ACS was not a valid, written contract as I.C. § 67-2358 requires. This Court declines to address this argument because regardless of the underlying contract's validity, IDJC did not have a valid debt to assign to ACS. Thus, regardless of the validity of the contract, ACS cannot recover from Black.

7