875 P.2d 236

**STUDENT LOAN FUND OF IDAHO, INC., an Idaho corporation, Plaintiff–Appellant,**

v.

**PAYETTE COUNTY, a political subdivision of the State of Idaho, City of Fruitland, a municipal corporation, Defendants–Respondents.**

No. 20577.

Court of Appeals of Idaho.

June 1, 1994.

Ricks & Ramey, Boise, for appellant. Frederick L. Ramey, argued.

Moore & McFadden, Boise, for respondents. Mona L.D. Mack, argued.

LANSING, Judge.

We are asked to decide whether the Student Loan Fund of Idaho, Inc. (Fund) has standing to maintain a declaratory judgment action challenging the validity of an agreement between Payette County and the City of Fruitland and of certain implementing ordinances adopted by those entities, which designated an area of city impact for Fruitland. Because we agree with the district court's determination that the Fund has not demonstrated it has suffered or will suffer injury as a consequence of the contested governmental actions, we affirm the dismissal of the action for lack of standing.

## BACKGROUND and PROCEDURE

The controversy arose from actions taken by Fruitland and Payette County pursuant to Idaho's Local Planning Act, I.C. §§ 67–6501 to 6529. Section 67–6526 of the Act requires each county and each city therein to establish "an area of city impact within the unincorporated area of the county" and to adopt by ordinance a map identifying the area of city impact.[1] The statute also mandates that cit-

---

1. At the time of the events giving rise to this litigation, I.C. § 67–6526(a) required that such designation of an area of city impact be accomplished by January 1, 1978; by amendment of

ies and counties adopt separate ordinances providing that the area of city impact shall be subject to: (1) the city land use plan and ordinances, or (2) the county plan and ordinances, or (3) any mutually agreed upon plan and ordinances. The object of these requirements is to "delineate areas of future contiguous growth in order to assure their orderly development and thereby reconcile potentially competing designs for boundary expansion with accepted land use planning principles." *City of Garden City v. City of Boise,* 104 Idaho 512, 514, 660 P.2d 1355, 1357 (1983).

In 1990, the city of Fruitland initiated proceedings in cooperation with Payette County aimed at compliance with Section 67–6526. The city and county drafted and adopted by ordinances an agreement and map defining Fruitland's area of impact. The agreement specifies the zoning for land within the impact area and provides that the county will amend its zoning ordinances to conform to the agreed zoning for the impact area. The agreement calls for the county to adopt a new zoning designation known as "agriculture preservation." Within portions of the impact area to be zoned "agriculture preservation," the agreement provides that "no further development or division of property shall be allowed unless agreed to by both the City and County." Although both the city and county have passed ordinances adopting the agreement itself and the map, the county has not as yet complied with the agreement by passing an ordinance which adopts the specified zoning for the affected land.

The Fund owns land located wholly within the specified area of city impact. A small portion of the Fund's property is in the area which, according to the map, is to be zoned commercial, with the balance of its property being in the agriculture preservation zone. The record is silent as to how the Fund's land was zoned at the time of the agreement.

In June 1991, the Fund filed a declaratory judgment action against Payette County and the city of Fruitland seeking a judicial determination that the agreement and ordinances relating to Fruitland's area of city impact are invalid by reason of the defendants' noncompliance with statutory procedures established by I.C. § 67–6526, their disregard of open meeting and public hearing requirements of I.C. §§ 67–2342 and 67–6509, and violation of the Fund's constitutional rights to due process and equal protection.

Within a few months after this action was initiated, the city filed a motion for summary judgment, and the county filed a motion to dismiss the complaint. The district court granted the defendants' motions and ordered dismissal on the ground that the Fund lacks standing to bring this action. The Fund appeals from that decision.

## ANALYSIS

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law. I.R.C.P. 56(c). The district court, and this Court on appeal, must liberally construe the facts in the existing record in favor of the party opposing the motion, who is also to be given the benefit of all reasonable inferences drawn from those facts. *Doe v. Durtschi,* 110 Idaho 466, 469, 716 P.2d 1238, 1241 (1986); *Smith v. Idaho State Univ. Fed. Credit Union,* 103 Idaho 245, 646 P.2d 1016 (Ct.App.1982).

The standard for reviewing a Rule 12(b)(6) motion for dismissal of a complaint is the same as that applicable to motions for summary judgment. *Miles v. Idaho Power Co.,* 116 Idaho 635, 637, 778 P.2d 757, 759 (1989). "The non-moving party is entitled to have all inferences from the record viewed in his favor, and only then may the question be asked whether a claim for relief has been stated." *Id.*

The Fund's action is for declaratory relief. Idaho's courts are authorized to determine by declaratory judgment the validity of contracts and municipal ordinances and the rights and status of persons thereunder. I.C. §§ 10–1201 and 10–1202.[2]

the statute in 1993, the deadline was extended to November 1, 1994. I.C. § 67–6526(a) (1989) *amended by* 1993 Idaho Sess. Laws 150 (current version at § 67–6526(a) (Supp.1993).

2. I.C. § 10–1201 provides:
Courts of record within their respective jurisdictions shall have the power to declare rights, status, and other legal relations, whether or

■ While the authority to render a declaratory judgment is bestowed by statute, that authority to declare rights, status, or other legal relations is circumscribed by the rule that "a declaratory judgment can only be rendered in a case where an actual or justiciable controversy exists." *Harris v. Cassia County,* 106 Idaho 513, 516, 681 P.2d 988, 991 (1984). Justiciability questions are generally viewed to be divisible into several sub-categories—advisory opinions, feigned and collusive cases, standing, ripeness, mootness, political questions and administrative questions. *See Miles v. Idaho Power Co.,* 116 Idaho at 639, 778 P.2d at 761. Of the foregoing elements, only standing has been questioned by the defendants here.

The doctrine of standing focuses not upon the merits or character of the issues sought to be adjudicated but rather upon the party seeking relief. *Miles,* 116 Idaho at 641, 778 P.2d at 763. Standing presents essentially a question of the plaintiff's "qualification" to bring the action. A helpful explanation of the criteria for standing was presented in *Duke Power Co. v. Carolina Env. Study Group,* 438 U.S. 59, 72, 98 S.Ct. 2620, 2630, 57 L.Ed.2d 595 (1978), and adopted by our Supreme Court in *Miles.*

> The essence of the standing inquiry is whether the party seeking to invoke the court's jurisdiction has "alleged such a personal stake in the outcome of the controversy as to assure the concrete adversariness which sharpens the presentation upon which the court so depends for illumination of difficult constitutional questions." As refined by subsequent reformation, this requirement of "personal stake" has come to be understood to require not only a "distinct palpable injury" to the plaintiff, but also a "fairly traceable" causal connection between the claimed injury and the challenged conduct.

*Miles,* 116 Idaho at 641, 778 P.2d at 763 (citations omitted). The *Miles* court further stated: "Thus, to satisfy the case or controversy requirement of standing, litigants generally *must allege or demonstrate an injury in fact* and a substantial likelihood that the judicial relief requested will prevent or redress the claimed injury." *Id.* (Emphasis added).

■ In the case before us, the district court held that the Fund lacked standing to seek declaratory relief for the reason that:

> Nothing in the record substantiates the Fund's claim its "rights, status or other legal relations are affected by a statute, municipal ordinance" or the like; neither the filing of this lawsuit nor the Fund's allegation it is an "aggrieved person" substantiates that claim. The Fund failed [to] show what harm it has suffered or will suffer due to the City's and the County's actions. For example, there is no allegation the City's and the County's actions will increase the Fund's taxes, decrease services available to the Fund, decrease the value of the Fund's property, prevent the Fund from developing its property, or interfere with the Fund's use and enjoyment of its property.... The Fund has not shown it is an affected person.

The district court's conclusion is well taken. The Fund has neither alleged nor presented evidence that it has been or will be injured in fact by the actions of the city and county.

The Fund asserts that it is "affected" by the ordinances adopting the impact area agreement, as that word is used in I.C. § 10-1201, because its land will fall within the agriculture preservation zone if Payette County rezones in compliance with the impact area agreement. We note that this is a contemplated future change, not an accomplished rezoning of the property. Although

not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect, and such declaration shall have the full force and effect of a final judgment or decree. I.C. § 10–1202 provides:

Any person interested under a deed, will, written contract or other writings constituting a contract or any oral contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder.

the agreement calls for the county to adopt particular zoning for the area of city impact, as of the date of oral argument in this case, the county had not complied with the agreement by amending its zoning ordinances. Hence, zoning of the Fund's land is as yet unchanged and, absent further action by the county, will remain so. We recognize that standing may be predicated not only upon a past injury but also upon a threatened harm. *Harris, supra; Idaho Branch, Inc. of the Associated Gen. Contractors of America, Inc. v. Nampa Highway Dist. No. 1,* 123 Idaho 237, 240, 846 P.2d 239, 242 (Ct.App.1993). Therefore, the peril of an imminent rezoning of the Funds' property could be a sufficient predicate for standing if the rezone would inflict some injury. However, there is no indication in the record that if and when the agreed zoning is adopted by the county, it will be detrimental to the Fund. We find no evidence that the zoning called for by the agreement would alter in any way the permitted uses of or restrictions upon the Fund's property or adjoining land, or that it has or will impair the land's marketability or value. There is no indication that the new "agriculture preservation" designation is anything other than altered nomenclature for what is already an agricultural or rural zone. In short, the Fund has neither alleged nor offered proof that inclusion of its property within the city impact area will inconvenience the Fund, place new limitations upon its use or enjoyment of the land or cause economic injury.[3]

The Fund draws our attention to two Idaho Supreme Court decisions, *McCuskey v. Canyon County,* 123 Idaho 657, 851 P.2d 953 (1993), and *Jerome County v. Holloway,* 118 Idaho 681, 799 P.2d 969 (1990), which are interpreted by the Fund as recognizing a "right" to contest the validity of a zoning ordinance by way of a declaratory judgment action. While we agree that these decisions establish that, under certain circumstances, a declaratory judgment action is an appropriate mechanism for judicial determination of the validity of zoning ordinance amendments, neither case presented any question as to the plaintiff's standing to bring the suit. Accordingly, we find those decisions inapposite.

The Fund also argues that it has standing to bring a declaratory judgment action because it is situated differently from the general populace of Payette County with respect to the city impact area ordinances. The Fund contends that because its land falls within the impact area, it is not challenging the actions of the city and county merely as a county resident or taxpayer, but, rather, that it has a particularized interest at stake. The Fund relies upon *Bopp v. City of Sandpoint,* 110 Idaho 488, 716 P.2d 1260 (1986), and *Greer v. Lewiston Golf and Country Club, Inc.,* 81 Idaho 393, 342 P.2d 719 (1959), in support of this proposition.

In *Greer* the plaintiffs, as electors and taxpayers of the city of Lewiston, sought a judgment declaring void a city ordinance disannexing certain real property from the city. The plaintiffs alleged that the loss to

---

3. Although not argued by the Fund, one could hypothesize that the Fund might one day seek to develop or sell a portion of its property and may be hindered by the city's authority, conferred by the impact area agreement, to bar such development within the agriculture preservation zone. The city's involvement in the approval process could result in rejection of the Fund's plans or cause inconvenience and additional expense by necessitating that the Fund obtain approval from both governments for land use proposals which would, absent the agreement, have required authorization only from the county. However, this amounts to purely speculative anticipation of future harm which may never occur. Such speculation does not demonstrate an extant or threatened palpable injury nor show the existence of a "justiciable controversy." In summarizing the

elements of a justiciable controversy, our Supreme Court has stated:

A "controversy" in this sense must be one that is appropriate for judicial determination.... *A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character;* from one that is academic or moot.... The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests.... It must be a real and substantial controversy admitting of specific relief through a decree of conclusive character, *as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.*

*Harris,* 106 Idaho at 516, 681 P.2d at 991 *quoting Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227, 240–41, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937) (emphasis added).

the city of property taxes and license fees arising from the disannexed property would cause an increase in the tax burden of the remaining taxpayers. In affirming dismissal of the action the Idaho Supreme Court noted that a party may maintain a declaratory judgment action only if he has an interest peculiar to himself and is not asserting an interest that is shared by the public generally. The *Greer* plaintiffs were deemed to lack standing because the increased tax burden of which they complained was not a special interest or injury peculiar to the plaintiffs but was an injury shared by all of the taxpayers of the city.

In *Bopp,* the plaintiff challenged a city ordinance vacating a public right-of-way in a bridge and the city's subsequent lease of the underlying property for development of a shopping center. The Supreme Court held that because Bopp, who owned no property adjacent to the vacated right-of-way, asserted no injury peculiar to himself but only such injury as was sustained by the general public, he could not maintain the declaratory judgment action.

*Bopp* and *Greer* establish that a citizen and taxpayer who asserts only a generalized harm shared alike by all the citizenry has no standing to contest a governmental action. These decisions do not, however, stand for the proposition urged by the Fund that mere ownership of property within or adjacent to the area addressed by an ordinance will confer standing. Status as an owner of land within a designated area does not relieve a complainant of the necessity of demonstrating a "distinct palpable injury" traceable to the challenged governmental conduct. It is the quality or magnitude of the injury suffered which must differentiate a plaintiff from the citizenry at large in order to confer standing. The situs of owned property in relationship to an area touched by an ordinance is relevant to a standing inquiry only insofar as the property's location exposes the landowner to peculiarized harm. The deficiency in the Fund's status is not that its injury is undifferentiated from that suffered by the general populous of Payette County, but rather, that it has shown no injury at all.

Finally, the Fund urges that the denial of its rights conferred by I.C. §§ 67-2342 and 67-6509 to participate, via public hearings and open meetings, in the city impact area designation process, is a harm suffered by the Fund sufficient to create standing. We cannot conclude that the alleged exclusion of the Fund's representatives, together with all other residents of the city and county who similarly were entitled to observe and participate in the process, constitutes the type of "palpable injury" peculiar to the plaintiff that is essential to standing. It is more akin to the generalized grievances that *Greer* and *Bopp* declared to be insufficient for standing.

We do not, by our holding, derogate the importance of the issues which the Fund has sought to litigate regarding alleged noncompliance with open meeting laws and statutory procedures for adoption of areas of city impact. To the contrary, our Supreme Court has stated that, "It is a well settled principle that notice and hearing requirements in zoning enabling acts are conditions precedent to the proper exercise of the zoning authority." *Citizens for Better Gov't v. County of Valley,* 95 Idaho 320, 322, 508 P.2d 550, 552 (1973). However, the public importance of the issues presented does not obviate the necessity of showing that a harm or peril personal to the plaintiff is caused by the challenged governmental conduct. An interest, as a concerned citizen, in seeing that the government abides by the law does not confer standing. *See Greer,* 81 Idaho at 396, 342 P.2d at 721; *Thomas v. Riggs,* 67 Idaho 223, 228, 175 P.2d 404, 407 (1946).

The question before us is whether the contested governmental action is presently reviewable at the Fund's instance. We hold that it is not. The dismissal of this action is, however, without prejudice to the Fund's right to initiate a new action in the event that the requisites for standing become satisfied hereafter.

The city and county have requested an award of attorney fees on appeal pursuant to I.C. § 12-121 and I.A.R. 41 on grounds that the appeal was brought frivolously or unreasonably. The Fund's appeal involves a com-

plex area of the law and entails application of the standing doctrine which our courts have acknowledged is "imprecise and difficult in its application." *Miles,* 116 Idaho at 641, 778 P.2d at 757. We do not find the Fund's arguments to be so unsound or unreasonable as to warrant an award of attorney fees pursuant to I.C. § 12–121.

The district court's order dismissing Student Loan Fund's complaint on the basis of lack of standing is affirmed. Costs to respondents.

WALTERS, C.J., and PERRY, J., concur.