# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 41600

THOMAS ARNOLD and REBECCA ARNOLD,

    Plaintiffs-Appellants,

v.

CITY OF STANLEY, a municipal subdivision of the State of Idaho,

    Defendant-Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, February 2015 Term

2015 Opinion No. 23

Filed: February 26, 2015

Stephen W. Kenyon, Clerk

---

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Custer County. Hon. Joel E. Tingey, District Judge.

The judgment of the district court is affirmed.

Greener Burke Shoemaker Oberrecht P.A., Boise, for appellants. Fredric V. Shoemaker argued.

Moore Smith Buxton & Turcke, Chtd., Boise, for respondent. Paul J. Fitzer argued.

_____

J. JONES, Justice

Thomas and Rebecca Arnold appeal a grant of summary judgment in favor of the City of Stanley (City). The Arnolds filed a complaint seeking to have action taken by the City at a city council meeting declared null and void, arguing that the meeting violated Idaho's open meeting law. The district court granted the City's motion, finding the Arnolds were not adversely affected by the alleged violation of the open meeting law and, therefore, did not have standing to bring the challenge. The Arnolds timely appealed.

## I.
## FACTUAL AND PROCEDURAL BACKGROUND

The Arnolds own property in Stanley, Idaho. On August 7, 2012, the City provided notice to the Arnolds and other interested parties of the date and time for three public hearings and a regular city council meeting, all scheduled to take place on August 9, 2012. The first of the three

1

public hearings was noticed to begin at 5:00 p.m. and was for the purpose of receiving public comment on proposed Ordinance 189, the ordinance that the Arnolds allege affects their property rights.[1] The second and third hearings were noticed to begin at 5:15 p.m. and 5:30 p.m., respectively, and were for the purpose of public comment on matters not at issue here. The regular city council meeting was noticed to begin at 6:00 p.m.

On August 9, the first two meetings were held at their scheduled times. The third meeting began five minutes early, at 5:25 p.m., and concluded at 5:29 p.m. The regular city council meeting, scheduled to begin at 6:00 p.m., commenced at 5:31 p.m. and adjourned at 6:55 p.m. (6:00 p.m. meeting). Prior to the start of the 6:00 p.m. meeting, the City did not amend the notices it had provided or otherwise notify the public that the meetings would begin earlier than scheduled. The early start time of the 6:00 p.m. meeting and the City's failure to provide amended notice of the earlier start time are the events that led to the current action. It was at the 6:00 p.m. meeting that the mayor and city council deliberated toward a decision on Ordinance 189, eventually voting to adopt the ordinance.

In the days leading up to these meetings, the Arnolds exchanged several emails with Stanley's city clerk regarding the subject matter of the meetings in question, including proposed Ordinance 189. The Arnolds requested that specific statements from these emails be read into the meeting record as their testimony during the discussion regarding Ordinance 189. According to the meeting minutes, two emails from Rebecca Arnold were read into the record during the 5:00 p.m. meeting and two were read during the 6:00 p.m. meeting. Although the Arnolds were fully aware of the agenda items to be discussed at the various meetings, at no time from the outset of the first meeting at 5:03 p.m. until the final meeting adjourned at 6:55 p.m. did they attend the meeting, attempt to call the office, or otherwise participate in the meeting other than the written testimony they provided, which was read into the record. The Arnolds also conceded at oral argument that they had no intention of attending the meeting.

Following adoption of Ordinance 189, the Arnolds filed an action against the City under Idaho Code section 67-2347(6), seeking to have the ordinance declared null and void because the City held the 6:00 p.m. meeting in violation of Idaho's open meeting law by starting the meeting early and failing to provide notice of the earlier start time. The district court held the Arnolds

---

[1] There is a dispute between the parties as to whether Ordinance 189 does, in fact, adversely affect the Arnolds' property rights. Because resolution of that question does not bear on the ultimate outcome of this case, we do not decide the issue but assume the Arnolds are correct for purposes of our analysis.

2

lacked standing to bring an enforcement action because the plain language of Section 67-2347(6) allows standing for such an action only to one who is actually affected by a violation of the open meeting law, instead of being affected only by a substantive action taken at the meeting. The court granted the City's motion for summary judgment on this basis. The Arnolds timely appealed.

## II.
## ISSUES ON APPEAL

1.  Whether Idaho Code section 67-2347(6) allows a private cause of action to enforce Idaho's open meeting law where the challenger was not adversely affected by the alleged violation of the open meeting law.

2.  Whether the City is entitled to attorney fees.

## III.
## ANALYSIS

### A.  Standard of review.

The standard of review on appeal from the district court's grant of summary judgment is well-settled:

> On appeal from the grant of a motion for summary judgment, this Court utilizes the same standard of review used by the district court originally ruling on the motion. Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). . . . If the evidence reveals no disputed issues of material fact, then only a question of law remains, over which this Court exercises free review.

*Conner v. Hodges*, 157 Idaho 19, 23, 333 P.3d 130, 134 (2014) (internal case citations omitted). "Statutory interpretation is a question of law subject to free review." *J&M Cattle Co. v. Farmers Nat'l Bank*, 156 Idaho 690, 692, 330 P.3d 1048, 1050 (2014).

### B.  Only one adversely affected by a violation of Idaho's open meeting law may bring a private enforcement action under Idaho Code section 67-2347(6).

Idaho Code sections 67-2340 through 67-2347 make up Idaho's "open meeting law," which imposes procedural requirements (e.g., notices of meetings, agendas, etc.) on public agencies to ensure citizens' access to the formation of public policy. *See Petersen v. Franklin Cnty.*, 130 Idaho 176, 180–82, 938 P.2d 1214, 1218–20 (1997). Although the City provided notices and agendas regarding the meetings in question, the district court found that the City's early commencement of the 6:00 p.m. meeting and failure to amend the meeting notice to

account for that change was a violation of the open meeting law.

Idaho Code section 67-2347 addresses the enforcement mechanisms and remedies available when there has been a violation of the open meeting law. Section 67-2347(1) provides that "[i]f an action, or any deliberation or decision making that leads to an action, occurs at any meeting which fails to comply with the provisions of sections 67-2340 through 67-2346, Idaho Code, such action shall be null and void." Section 67-2347(5) empowers the attorney general and county prosecutors to institute actions to enforce the open meeting law. In addition, Section 67-2347(6) provides for a private cause of action to enforce compliance with the open meeting law: "Any person affected by a violation of the provisions of this act may commence a civil action . . . for the purpose of requiring compliance with provisions of this act."

Alleging their property interests were adversely affected by action taken at the City's meetings, the Arnolds brought action under Section 67-2347(6) to have all actions taken in those meetings declared void because the meetings began early in violation of the open meeting law.[2] The district court found the Arnolds did not have standing under Section 67-2347(6) to bring an enforcement action because they were not actually affected by the City's violation of the open meeting law. It found that standing exists to challenge an open meeting law violation only for those who are affected *by that violation* and the only alleged violation in this case was the early start to the 6:00 p.m. meeting. Because there was nothing in the record to support a claim that the Arnolds were affected by the early start time, the court ultimately concluded they were not adversely affected by the violation and did not have standing to bring an enforcement action. The Arnolds argue the text and purpose of the open meeting law support a broader interpretation of who has standing to bring an enforcement action. They argue there are many ways one might be "affected by" a violation of the open meeting law, including when one's property rights are adversely affected by an action taken at a meeting when that meeting was held without compliance with the open meeting law. The City responds that to reach the Arnolds' conclusion, the Arnolds must necessarily take the words "affected by" out of their context in the statute. The City argues that one who is adversely affected *by a substantive action taken at a meeting* that is held without strict compliance with the open meeting law is not necessarily always directly affected *by the violation of the open meeting law*, as required by the statute. We agree with the

_____

[2] The Arnolds initially challenged another action taken by the City at the meetings, consideration and adoption of the City's FY13 Budget in Ordinance 188, but have not pursued that issue on appeal.

4

district court and the City.

When this Court is tasked with determining the meaning of a statute:

> The interpretation of a statute must begin with the literal words of the statute; those words must be given their plain, usual, and ordinary meaning; and the statute must be construed as a whole. If the statute is not ambiguous, this Court does not construe it, but simply follows the law as written. We have consistently held that where statutory language is unambiguous, legislative history and other extrinsic evidence should not be consulted for the purpose of altering the clearly expressed intent of the legislature.

*Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 893, 265 P.3d 502, 506 (2011) (internal citations omitted). To ascertain the ordinary meaning of an undefined term in a statute, we have often turned to dictionary definitions of the term. *See, e.g.*, *Hap Taylor & Sons, Inc. v. Summerwind Partners, LLC*, 157 Idaho 600, 614, 338 P.3d 1204, 1218 (2014).

The Arnolds turn to several provisions of the Idaho open meeting law to argue the Legislature intended broad protection against violations and vested a wide array of persons with the authority to seek private enforcement of the law. They first cite to the opening provision of the open meeting law:

> The people of the state of Idaho in creating the instruments of government that serve them, do not yield their sovereignty to the agencies so created. Therefore, the legislature finds and declares that it is the policy of this state that the formation of public policy is public business and shall not be conducted in secret.

I.C. § 67-2340. Quoting Section 67-2342(1), they argue the open meeting law broadly requires that "all meetings of a governing body of a public agency shall be open to the public and all persons shall be permitted to attend any meeting except as otherwise provided by this act." They argue the language in Section 67-2347(1), saying that any action taken in a meeting held in violation of the open meeting law is null and void, is not worded in such a fashion as to limit an enforcement action *only* to the effects of a procedural violation. They state, "rather, the law specifically indicates that the action, itself, may give rise to standing to assert a cause of action for a violation of the open meeting law." The Arnolds quote the portion of Section 67-2347(6) regarding the time within which one may bring an enforcement action:

> Any suit brought for the purpose of having an action declared or determined to be null and void pursuant to subsection (1) of this section shall be commenced within thirty (30) days of the time of the *decision or action* that results, *in whole or in part*, from a meeting that failed to comply with the provisions of this act.

(Emphasis added by the Arnolds). They suggest that this language somehow shows Section 67-

2347(6) should be interpreted broadly to include those affected by the action taken at the meeting rather than just those affected by the violation of the open meeting law. Although the Arnolds argue the language of these provisions supports a broad interpretation of who has standing to enforce the law, they do not make specific arguments as to how the language in these provisions can actually be read to allow standing to one who is substantively affected by an action taken by a governing body at a meeting. We are not persuaded by their arguments.

First, although the Arnolds are correct that the open meeting law mandates that meetings not be held in secret, the circumstances under which the meetings were held in this case do not indicate secrecy. The City provided notice of the meetings to all interested parties. It also posted notice of the meetings at Stanley City Hall, where the meetings were to be held, and published notice in the Challis Messenger. The City allowed the public to attend the meetings and participate in the discussion. It also kept a record of the meetings and read into the record the testimony of those who were not able to attend. None of the facts of this case suggest there was an intent to conduct, or an effect of conducting, these meetings in secret.

Second, although the Arnolds are, again, correct that the City failed to amend the notices to account for earlier start times, the Arnolds fail to allege any facts or make any argument as to specifically how not having these amended notices affected the Arnolds or equated to the City preventing anyone in the public from attending the meeting.

Third, the Arnolds' argument that Section 67-2347(1) indicates a broader scope of standing than was applied by the district court is without merit. Section 67-2347(1) has no bearing on *who* may bring the action. It simply provides the elements of the violation that must be met to bring the cause of action: (1) there must be an action, or a deliberation or decision-making that leads to an action; and (2) that action, deliberation, or decision-making, must occur at a meeting that violates the open meeting law. I.C. § 67-2347(1). This section says nothing about the method by which the violation may be remedied or who may bring an enforcement action to remedy it. That is provided for in other subsections. The Arnolds are correct that a meeting action (as opposed to a "deliberation or decision-making") may give rise to an enforcement action if that meeting action is taken at a meeting that does not comply with the open meeting law, but being affected by the meeting action taken is not what gives one standing. It is the violation of the open meeting law that gives one affected by that violation standing to bring an enforcement action. I.C. § 67-2347(6). Section 67-2347(6) clearly states that one can

6

have standing for an enforcement action only if he/she is "affected *by a violation* of the *provisions of* [*the*] *act*." (Emphasis added).

Furthermore, the language the Arnolds quote from Section 67-2347(6), regarding the limitations period for bringing an enforcement action, does nothing to alter the language earlier in subsection (6) that expressly provides standing only to those affected by the violation of the open meeting law. The Arnolds provide no convincing argument to overcome this plain reading of the statute.

The Arnolds argue the district court applied a narrow interpretation of the "affected by" language that permits standing only for those persons who may have been physically shut out of a meeting. They argue this application provides a private enforcement action only to otherwise disinterested citizens and not to those whose rights are substantively "affected by" the actions taken by the government body at the meeting. However, they mischaracterize the district court's conclusion. The district court did not find the only people to be "affected by a violation" are those shut out of a meeting. While that is one example of a person who may be affected by a violation, the district court simply found that the Arnolds were not in any way affected by the violation of the open meeting law, that violation being the early start time. The court did not hold that one whose substantive property rights were affected by the City's passage of Ordinance 189 could never have standing to bring an action to enforce the open meeting law. One who is substantively affected by action taken at a meeting may certainly have standing to challenge the action if he/she was also affected by a violation of the open meeting law. Had the Arnolds planned to attend the meetings in person, but were unable to make their comments at the meeting because it had concluded by the time they arrived, without question they would then have been affected by the early start time. They would not have had a chance to have their comments heard or to participate and witness the process of making public policy. The City admits as much. However, the Arnolds simply do not allege any such harm resulting from the early start time.

The dictionary definition of "affect" is "to produce an effect upon," listing as synonyms: "influence" and "impress" (among others). *Webster's Third New International Dictionary, Unabridged* 35 (Philip Babcock Gove et al. eds., 1976). *Webster's* further explains that "'affect' applies to a stimulus strong enough to bring about a reaction . . . or bring about some modification." *Id. Black's Law Dictionary* similarly defines "affect" as "to produce an effect on; to influence in some way." 65 (9th ed. 2011). Applying these definitions to the plain language in

Section 67-2347(6), there does not appear to be any way the Arnolds can argue they were "affected by" the early start of the 6:00 p.m. meeting. They do not argue there was any *effect* on them or their rights that was caused by the meeting beginning early. Though they did not have an amended notice of the earlier start time, they had actual notice that the meetings would happen. They did not attempt to attend any of the meetings, instead choosing to submit written testimony, which was read into the record as requested. The Arnolds are in exactly the same position as they would have been had the meeting started on time and strictly complied with every other element of the open meeting law. Therefore, they were not "affected by" the starting time of the meeting.

In addition to their arguments that the plain language of the open meeting law supports their position, the Arnolds argue the legislative history of the open meeting law supports a broad interpretation of who may bring an enforcement action. However, we need not resort to an exploration of such history. The plain language of Section 67-2347(6) is not ambiguous, as it clearly requires one to be affected by a violation of the open meeting law in order to have standing. Because Arnolds have not provided any facts or argument to show they were in any way affected by the violation—the early start time—we hold that they do not have standing under Section 67-2347(6) to challenge the City's violation of the open meeting law.

Finally, the Arnolds argue that even if they were not directly affected by the violation of the open meeting law, they had an interest in ensuring that the City conducted its business in plain view, for all interested citizens. However, the fact that others may have hypothetically been affected by the meeting's early start time on this occasion does not give the Arnolds standing to protect those hypothetical others' rights. "An interest, as a concerned citizen, in seeing that the government abides by the law does not confer standing." *Student Loan Fund of Idaho, Inc. v. Payette Cnty.*, 125 Idaho 824, 828, 875 P.2d 236, 240 (Ct. App. 1994) (citing *Greer v. Lewiston Golf Country Club, Inc.*, 81 Idaho 393, 396, 342 P.2d 719, 721 (1959)).

## C. Attorney fees.

The City argues it is entitled to attorney fees under Idaho Code section 12-117 because the Arnolds' arguments are without a reasonable basis in fact or law. It argues that the Arnolds took the words "affected by" out of the context of Section 67-2347(6), and a plain reading of those words in the correct context shows that the Arnolds must have actually been affected by the alleged violation. It argues that because the Arnolds made no attempt to attend the meeting, and they had their comments read into the record at the meeting, there is no basis in fact or law

to argue they were affected by the early start time. The Arnolds respond that the plain language of the statute supports an interpretation allowing standing for those who are substantively affected by an agency action taken at a meeting that violated the open meeting law in some way, meaning they would have a reasonable basis in fact and law for their arguments. They also argue that the Court has often been reluctant to order attorney fees in cases involving matters of first impression, as they argue is the case here.

Idaho Code section 12-117 provides in relevant part:

> Unless otherwise provided by statute, in any proceeding involving as adverse parties a state agency or a political subdivision and a person, . . . the court hearing the proceeding, including on appeal, shall award the prevailing party reasonable attorney's fees . . . if it finds that the nonprevailing party acted without a reasonable basis in fact or law.

I.C. § 12-117(1). Although this Court typically does not award attorney fees in matters of first impression, *Saint Alphonsus Reg'l Med. Ctr. v. Ada Cnty.*, 146 Idaho 862, 863, 204 P.3d 502, 503 (2009), "[t]he purpose of I.C. § 12–117 is to serve as a deterrent to groundless or arbitrary action and to provide a remedy for persons who have borne unfair and unjustified financial burdens defending against groundless charges." *Canal/Norcrest/Columbus Action Comm. v. City of Boise*, 136 Idaho 666, 671, 39 P.3d 606, 611 (2001). In *Castrigno v. McQuade*, this Court awarded attorney fees to Ada County when an appellant appealed without a reasonable basis in fact or law. 141 Idaho 93, 98, 106 P.3d 419, 424 (2005). There we reasoned, in part, that attorney fees were appropriate because the appellants, in arguing to the Court, had added nothing to the argument that failed in the district court. *Id.* We noted that appellants had the benefit of the district court's well-reasoned, articulate analysis finding against their position, yet they still chose to expend more time and resources to bring an appeal, using the same arguments that were unpersuasive below and remained unpersuasive on appeal. *Id.*

Here, although the Court has not before addressed the scope of who may bring an enforcement action under Section 67-2347(6), the plain language of that section is clear enough that we believe the Arnolds' appeal was made without a reasonable basis in fact or law. Asserting that an appeal involves a matter of first impression is not a "free pass" to bring an appeal based on unreasonable arguments. The clear language of the statute in question provides that one must have been affected by the violation of the open meeting law. The Arnolds have not shown that they were affected by the violation here. The record is clear that they submitted written testimony and made no attempt to attend the meeting. Therefore, the alleged violation of

the open meeting law—the early start time—did not affect them in any way. There is nothing in the statute to suggest that one may have standing to bring an action to enforce the open meeting law based solely on the fact that one was affected by a substantive decision made at a meeting which was not influenced by the alleged violation. Being affected by the open meeting law violation and being affected by a substantive action at the violative meeting are clearly not the same. Although the Arnolds had the benefit of the district court's articulate and well-reasoned analysis to that effect, they still chose to bring an appeal, further raising the expense to the City to defend against the same arguments. Because a plain reading of the statute contradicts the Arnolds' position, and because they do not even claim to have been actually harmed by the 6:00 p.m. meeting's early start time, we find that their appeal was brought without a reasonable basis in fact or law. While they may have been reasonable in testing their theory in the district court, it is unreasonable to continue arguing the same losing theory before this Court. Therefore, City is entitled to attorney fees.

## IV.
## CONCLUSION

We affirm the Judgment of the district court. Costs and attorney fees are awarded to the City.


Chief Justice BURDICK, and Justices EISMANN, W. JONES and HORTON CONCUR.

10